## NELSON v. ASHTON-JENKINS CO. et al.

No. 4309.   Decided December 22, 1925.   (242 P. 408.)

1. ESCROWS—DEPOSITARY AGENT OF PARTIES ONLY IN LIMITED SENSE. Depositary of an escrow is agent of parties to escrow agreement only in doing and performing what it is required to do by terms of such agreement.

2. BROKERS—BROKER'S AGREEMENT WITH PARTY TO ESCROW AGREEMENT HELD VALID. After one party to escrow agreement refused to employ broker to get other parties to reduce stipulated price, it was not breach either of confidence, or duty for broker to make agreement with other parties whereby he received as commission all that could be obtained for land over $4,000, or to fail to disclose such agreement.

3. BROKERS—FACTS HELD NOT WITHIN RULE APPLICABLE TO GRATUITOUS PROMISES. Where plaintiff, party to escrow agreement, offered broker $25 to get reduction in price of land, and broker demanded $50, which plaintiff refused to pay, there was no gratuitous promise by broker, and the rule relating to such promises did not apply.

Appeal from District Court, Third District, Salt Lake County; *L. B. Wight,* Judge.

Action by Ella F. Nelson against the Ashton-Jenkins Company and others. Judgment for defendants, and plaintiff appeals.

AFFIRMED.

*H. C. Allen* and *E. R. Christensen,* both of Salt Lake City, and *L. E. Nelson,* of Logan, for appellant.

*R. Verne McCullough,* of Salt Lake City, for respondents.

Corpus Juris-Cyc. References.
[1] Escrows, 21 C. J. p. 878 n. 33.
[2] Brokers, 9 C. J. p. 540 n. 53.
[3] Agency, 2 C. J. p. 433 n. 49, 50, 51, 52.

THURMAN, J.

It is alleged in the complaint that during all the times therein mentioned the defendant Ashton-Jenkins Company, a corporation, was doing a real estate brokerage business in Salt Lake City, Utah, and that the individual defendants were agents of said corporation, and employed in its farm land department that on the 1st day of November, 1922, the defendant company was the agent and holder of a deed and escrow agreement between J. W. Frear and wife and Thomas Shaw and wife, as first parties, and Ole Dastrup, as second party, by which Dastrup purchased from the first parties certain lands, described in the escrow, and was to pay therefor the sum of $4,700 on November 10, 1922, or within 30 days thereafter; that Dastrup sold and assigned his interests under said agreement to Paul E. Nelson, who thereafter sold and assigned the same to the plaintiff and that the defendant corporation as to each of said assignments held said agreement as escrow agent for the assignee thereof.

It is then alleged, in substance, that, as the agents of plaintiff, and as an inducement to her to complete the purchase of the land described in said agreement, the defendants promised to use their best efforts to induce said first parties to accept a sum less than $4,700 as full payment under said agreement; that said defendants, on or about November 25, 1922, represented to plaintiff that they had been unable to induce said first parties to accept any sum less than the $4,700, whereupon plaintiff paid to said defendants, as her agents, the sum of $4,700, to be paid by them to the first parties to said escrow agreement.

It is further alleged in the complaint that, notwithstanding said representations made to her by the defendants, the defendants had entered into an agreement with said first parties wherein said first parties had agreed to accept $4,000 in full performance of said escrow agreement, and thereafter did accept said sum in full performance thereof; that defendants thereby wrongfully and deceitfully obtained from the plaintiff the sum of $700, and converted the same to their own use, for which sum plaintiff prays judgment.

Defendants answering, admit that Ashton-Jenkins is a corporation doing business in Utah; that it was the holder of the escrow agreement in question, and admit the terms thereof as alleged in the complaint. It is also admitted that Ole Dastrup sold and assigned his interest therein to Paul E. Nelson, but defendants deny generally and specifically the remaining allegations of the complaint. A jury was impaneled to try the cause, but at the close of the evidence for the plaintiff the court, on motion of the defendants, entered an order of nonsuit and judgment dismissing the action. Plaintiff appeals, and assigns as error the aforesaid rulings of the court.

The burden was upon the plaintiff to prove that the defendants, or one or more of them, were her agents, as alleged in the complaint. The trial court was of opinion she had not discharged the burden, and at the close of her evidence took the case from the jury. The only question here is, Was the evidence submitted by her sufficient to sustain a judgment in her favor? It is not contended by appellant that there was an express contract by which the relation of agency was established, but that there were circumstances and conduct from which an agency might be implied.

Much of the evidence introduced had but little, if any, relevancy to the issue to be tried. It was admitted, however, because it was difficult to determine at first blush whether or not it was relevant. Such evidence is so interwoven with that which was material as to render it somewhat difficult of intelligent analysis.

The facts relied on by appellant are substantially as follows: In the fall of 1922 Paul E. Nelson and wife, and N. A. Nelson, his father, entered into a contract with one Ole Dastrup by which the Nelsons exchanged their farm situated in Salt Lake County for other property belonging to Dastrup, including equities in contracts among which was his interest in the escrow agreement referred to in the pleadings. The business between the Nelsons and Dastrup appears to have been transacted by defendant Carlquist acting for the defendant Ashton-Jenkins Company, and the commission for said

service was paid by a promissory note of Paul E. Nelson and wife, payable to the order of Ashton-Jenkins Company. The note was afterwards paid by Paul E. Nelson, Carlquist and Boyce, each receiving $426.25, and the remainder to the Ashton-Jenkins Company. The contract between the Nelsons and Dastrup was admitted in evidence (over the objection that it was immaterial), for the avowed purpose of showing the relation between the Ashton-Jenkins Company and the other defendants and the manner in which that transaction was carried on.

Coming now to the transaction involved in the instant case, it appears that the escrow agreement referred to in the pleadings was entered into between the parties thereto in August, 1922, and that the Ashton-Jenkins Company was made the depositary thereof. The agreement specified that the sum of $4,700 must be paid November 10, 1922, or within 30 days thereafter. Ole Dastrup, the second party to said agreement to whom the land was to be conveyed, if paid for according to the terms of the escrow, sold and assigned his interest therein to Paul E. Nelson in the transaction to which we have hereinbefore referred. Paul E. Nelson, it appears, became financially embarrassed, and concluded he would not be able to make the payment required by the escrow agreement at the date designated therein, and in that situation entered into an arrangement with the plaintiff, his sister-in-law, whereby she would advance the money, receive the deed for the land, and give him the right to repurchase on certain conditions not necessary to detail here. The plaintiff, however, first desired to see the land, and also desired, if possible, to procure some reduction in the price to be paid therefor. Her husband, L. E. Nelson, went to the office of Ashton-Jenkins to examine the escrow agreement. He inquired for it, and was referred to Mr. Carlquist, in the farm land department. He asked Carlquist first to show him the land involved in the escrow, and, second, to see the escrow papers. Boyce went with plaintiff and her husband to show them the land. Boyce introduced Nelson to Mr. Shaw, one of the first parties to the escrow agreement. Nelson asked Shaw if he would accept

any sum less than $4,700. Shaw said he would have to see
his partner, Mr. Frear. Boyce and Nelson looked over the
land. Plaintiff remained in the car. Nelson told Boyce that
with the first mortgage on the land he thought the price
excessive. Boyce went over into the field to Mr. Shaw, then
returned, and drove Nelson and plaintiff back to town. Nel-
son asked Boyce what success he had. Boyce said he prob-
ably could get $200 reduction, but that Shaw would have to
see his.partner, Mr. Frear. Nelson then told Boyce he would
give him $25 if he could get the reduction. Boyce, said it
would necessitate a trip to Bingham, and that it was worth
$50 to go up there. Nelson said, "No, I won't give you $50.
There is no guarantee of any reduction." The failure to
agree, as above set forth, is corroborated by plaintiff, to whom
her husband related the facts. Paul E. Nelson testified he
heard a conversation between Boyce and L. E. Nelson sub-
stantially to the same effect; that Boyce and Nelson could not
agree as to the price.

There is evidence to the effect that plaintiff afterwards, and
before she paid for the land, asked Carlquist and Boyce if
they had been able to obtain a reduction in the price, and that
they answered, "No." Substantially the same answer was
made to her on the day she made the payment. After exam-
ining the abstract and finding the title satisfactory, she called
upon Carlquist in Ashton-Jenkins Company's office. At the
place where he was sitting there was no sign except "Farm
Loan, or Farm Lands—something to that effect." She saw
no sign "Carlquist & Co.," or "Carlquist," or "Meadow
Brook Farm Company," and no sign outside except "Ashton
& Jenkins."

We make specific reference to these features of the evidence
because they are relied on by appellant as establishing the re-
lation between the defendant company and Carlquist and
Boyce. There is some evidence also to the effect that Carl-
quist was connected with other companies, and had an office
in the McIntyre Building, Salt Lake City.

On the 25th of November, 1922, plaintiff saw Carlquist at
the office of Ashton-Jenkins Company, and informed him she

had come to take up the escrow agreement. She told him she would make the check to Ashton-Jenkins and Shaw and Frear. Carlquist objected, and said it could not be done and was not necessary. She then said to her husband, who was with her, "if they don't want to do that, let's go, because we don't want to go into the deal unless Ashton-Jenkins sign it. We want their names on the paper because they are the men that hold the escrow agreement." She asked Carlquist if Ashton-Jenkins would indorse the check. He answered "Yes"; it would have to go through their office. Plaintiff testified she made her check to Shaw and Frear for $4,700, and did not sign it until Carlquist took it and got their indorsement. She signed the check and received the contents of the escrow, thus closing up the transaction.

The record discloses the fact that on November 13, 1922, Shaw and Frear, and their wives respectively, entered into a written agreement with Carlquist, who is described in the instrument as a real estate broker of Salt Lake City, to the effect that he would use his time and efforts to effect a consummation of the escrow agreement, and for his services in that behalf was to receive all that could be obtained in excess of $4,000. In other words, Shaw and Frear were to receive net $4,000 and be relieved of the payment of the water and land taxes for the year 1922, as required by the escrow agreement. The evidence also shows that this agreement was carried out. Shaw and Frear each received a check from Carlquist for the sum of $2,000, and indorsed and delivered to him the check which plaintiff had issued to them for the sum of $4,700. The taxes on the property for the year 1922 which Shaw and Frear were obligated to pay under the terms of the escrow agreement together with some trifling sums such as cost of revenue stamps, recording, etc., were paid by Carlquist and amounted to about $192. The difference between that sum and $700, as far as appears, constituted the amount Carlquist received.

We have carefully endeavored to glean from the transaction every word, circumstance, and feature of human conduct which, in our opinion, had any bearing on the case.

It is an undisputed fact that Ashton-Jenkins Company was the depositary of the escrow agreement in question. This appears to be the only connection they had with the case, unless Carlquist and Boyce were their agents in the transaction with plaintiff. That question will be considered later.

It is contended by appellant that the depositary of an escrow is an agent of the parties to the escrow agreement, citing *Gammon* v. *Bunnell,* 22 Utah, 421, 64 P.. 958. That can only be true in a limited sense. A depositary is undoubtedly an agent of the parties to do and perform what it is required to do by the terms of the escrow agreement. The escrow agreement in this case required the depositary to deliver the deed inclosed to the grantee on payment of the sum of $4,700 on or before November 10, 1922, or within 30 days thereafter. The plaintiff succeeded to the interest of the grantee named in the deed. She paid the sum of $4,700 as required by the agreement on the 25th of November, 1922, and received the contents of the escrow in question, including the deed. The plaintiff received exactly what she bought and paid for, and it therefore appears that the Ashton-Jenkins Company discharged every obligation imposed upon it by the terms of the escrow agreement. Whether or not it became liable because of some side agreement not within the terms of the escrow is more or less involved in the question next to be considered. Furthermore, unless it be determined that Carlquist and Boyce were agents of the Ashton-Jenkins Company in the matter of which plaintiff complains, it does not appear that said company received any consideration or had any interest whatever in the matter referred to.

Were Carlquist and Boyce, or either of them, agents of Ashton-Jenkins Company as to the matter in controversy? To all appearances the transaction between Paul E. Nelson and his father and Ole Dastrup in the exchange of property was performed by Ashton-Jenkins Company through Carlquist, as its agent, but that transaction has no relevancy to the matter in controversy further than to show that Carlquist was the agent of. the company in that transaction, and, therefore, it was relied on as a circumstance tending

to show that he might also have been its agent in the matter here complained of.

If there is any one fact in the record established beyond the peradventure of a doubt, it is the fact that there was no express contract of agency between plaintiff and defendants, or either of them. Indeed, it is indubitably established by the evidence that attempted negotiations looking to that end absolutely failed by the refusal of the plaintiff to pay the price demanded for the service. The failure of such negotiations left the parties just where they were before the negotiations were attempted. It is true the plaintiff and her husband, each, on one or more occasions, asked the defendants Boyce and Carlquist if any reduction in the price of the land could be obtained, and that they answered, ''No.'' It is also true that at that time Carlquist had in his possession a written agreement with Shaw and Frear by which he was to receive all that could be obtained for the land in excess of $4,000. He did not disclose this fact to the plaintiff, nor does it appear that he was under any legal obligation to disclose it. Plaintiff had refused to employ him to act for her and we know of no legal reason why he might not have entered into an agreement with Shaw and Frear on his own account. If Carlquist owed any legal duty to the plaintiff, then we are willing to concede that his conduct in withholding from her the true nature of the situation as above disclosed was at least morally reprehensible. We cannot treat the question from a moral point of view. As suggested by the trial court, in its oral opinion, it would not be fair, even if we could, for we have not heard defendants' version of the case. We can only consider the case from a legal point of view and determine the legal rights and obligations of the parties. Carlquist was a real estate broker, and had the right to negotiate purchases and sales of real estate for such compensation as might be agreed upon or as was authorized by custom. The plaintiff having refused to employ him in the matter in controversy, it was not a breach of either confidence or duty for him to accept employment from Frear and Shaw.

What is said concerning Carlquist applies also to Boyce. If neither Carlquist nor Boyce is liable to the plaintiff, it goes without saying that the Ashton-Jenkins Company is not liable. It is therefore unnecessary to incumber the opinion with an analysis of evidence which at most might only tend to show that there were some business connections between the defendants. The business relating to the matter of which plaintiff complains was all transacted by Carlquist and Boyce. If what they did did not constitute a legal wrong to the plaintiff, it is inconceivable that the Ashton-Jenkins Company committed a legal wrong.

Before concluding, however, appellant makes one contention that deserves brief consideration. Reference is made to 2 C. J. 433, title Agency, § 27, which reads as follows:

"An executory agreement to act as agent for another is ordinarily not binding on either party, unless it is based on a sufficient consideration. Where, however, one who gratuitously promises to act for another enters upon the performance of the undertaking, he is bound to complete performance according to his promise, notwithstanding the lack of consideration; and, if the promise has been executed in pursuance of the authority conferred, it is immaterial whether or not there was any consideration for the agent's undertaking, since the rule making consideration an essential element of a simple contract does not apply to executed agreements."

If there were any evidence in the record tending to show that any of the defendants gratuitously promised plaintiff to undertake to procure a reduction in the price of the land and entered upon the performance of said promise, the rule announced in the excerpt we have quoted might be persuasive in arriving at a just conclusion. But the court, after a most careful examination of the record, has been unable to find any evidence whatever of a promise, or that the defendants, or either of them, entered upon the performance of a promise. It follows, therefore, that the rule cited and relied on by appellant has no application in the case at bar.

We are of opinion the trial court did not err in entering an order of nonsuit and judgment dismissing the action.

The judgment is affirmed, at appellant's cost.

GIDEON, C. J., and FRICK and CHERRY, JJ., concur.
STRAUP, J., did not participate herein.