No. 84-139

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

FIRST FIDELITY BANK, a Banking Corp.,

Plaintiff and Appellant,

-vs-

MICHAEL E. MATTHEWS: and LARRY
MATTHEWS and SUSAN MATTHEWS, husband
and wife,

Defendants and Respondents.

_____

APPEAL FROM: District Court of the Seventh Judicial District,
In and for the County of Dawson,
The Honorable R. C. McDonough, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Cox & Simonton; Dale Cox, Glendive, Montana

For Respondent:

Bosch, Kuhr, Dugdale, Martin & Kaze; John Warner,
Havre, Montana

_____

Submitted on Briefs: Oct. 25, 1984

Decided: December 31, 1984

Filed: DEC 31 1984

_Ethel M. Harrison_
_____
Clerk

Hon. John C. Harrison
Justice, Supreme Court
Room 414 Justice Building
215 North Sanders
Helena, Montana 59620

CORRECTION. In preparing this opinion for publication, we noted in our verification of titles and citations the matters listed below. Corrections have been made on our copy of the opinion.

January 25, 1985

First Fidelity Bank v. Matthews, No. 84-139, Dec. 31, 1984

Page 6, line 10 --- 194 Cal.App. 699 should read 194 Cal. 699.

Page 7, line 4 --- Schultz v. Peake should read Schulz v. Peake.

Page 9, line 16 --- Haas v. Metro Goldwin Mayer should read Haas v. Metro Goldwyn Mayer.

WEST PUBLISHING COMPANY
Box 43526
St. Paul, MN 55164

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

First Fidelity Bank of Glendive appeals from a judgment of the Seventh Judicial District, in and for the County of Dawson, State of Montana, to recover on a promissory note and to set aside a fraudulent conveyance securing the note's payment.

Michael E. Matthews owned farm lands which were subject to a Federal Land Bank of Glasgow mortgage. In February of 1980, Michael leased the land to his brother, Larry Matthews and his wife, Susan and granted them an exclusive option to purchase. Larry agreed to purchase the land from Michael for $235,958.75. On January 2, 1981, Larry exercised his option and paid $18,000 down and executed a promissory note for $217,958.75. The terms of the note provided for annual installments in the sum of $19,003.82 commencing January 2, 1982. The promissory note was secured by a mortgage on the farm land executed and delivered to Michael by Larry and Susan. The following was placed into escrow with First State Bank of Malta, hereinafter referred to "escrow agent":

(i) the promissory note executed by Larry;

(ii) a warranty deed from Michael to Larry and Susan; and

(iii) a mortgage from Larry and Susan to Michael.

The promissory note provided for annual installments to be made to the escrow agent. The parties directed the escrow agent to disburse the annual installments in the following manner:

(1) To make the annual payment on the Federal Land Bank of Glasgow mortgage wherein Michael was the mortgagor; and

2

(2) to distribute the balance according to the instruction received from Michael.

On February 10, 1981, First Fidelity Bank made a loan to Michael in the sum of $6,614.34. Michael executed a promissory note in favor of First Fidelity Bank. As collateral for this note, Michael made a written assignment to First Fidelity of all monies due from the promissory note executed by Larry and held in escrow. Prior to accepting this assignment, First Fidelity verified the escrow arrangement with the escrow agent. On February 17, 1981, Michael executed a second promissory note for $500 to First Fidelity. First Fidelity sent a "Notice of Assignment" to the escrow agent. The escrow agent acknowledged receipt of the notice. First Fidelity did not send the "Assignment" or "Notice of Assignment" to Larry.

On January 2, 1982, Larry paid $15,167.96 which represented the first payment due and owing under the promissory note executed by Larry. The loan officer for the escrow agent contacted Larry regarding the $3,835.86 deficit payment. Larry had deducted that sum from his payment to recover a debt which Michael owed him. The loan officer also informed First Fidelity that the first payment made into escrow was short. The $15,167.96 was disbursed by paying:

(i) $13,666.46 to the Federal Land Bank of Glasgow;

(ii) $15.00 escrow fee; and

(iii) $1,486.50 to First Fidelity.

First Fidelity accepted the deficit payment from the escrow agent without complaint, since the note executed by Larry provided for twenty annual installments. The $1,486.50 received by First Fidelity was the only payment received by First Fidelity on the two notes executed by Michael. First

Fidelity used the $1,486.50 to pay off the $500 note and applied the balance to the $6,614.34 note. The $6,614.34 became due on February 10, 1982.

In the spring of 1982, Larry and Michael entered into a separate transaction outside of the escrow to pay off the indebtedness Larry owed to Michael. On May 25, 1982, Michael executed a "Satisfaction of Mortgage," satisfying the mortgage held in escrow. In June, 1982, Larry paid Michael $10,000 to satisfy Michael's total equity of $76,022.89. Larry received a 35% discount on the original transaction. The "Satisfaction of Mortgage" was never delivered to the escrow agent.

On March 31, 1983, First Fidelity brought an action against Michael Matthews; and Larry and Susan Matthews. First Fidelity sought recovery on the promissory note executed by Michael. First Fidelity also alleged the "Satisfaction of Mortgage" executed by Michael delivered to Larry and Susan was a fraudulent conveyance intended to defraud First Fidelity and hinder and delay the collection due First Fidelity under its note from Michael. A default judgment was entered against Michael Matthews. Larry and Susan Matthews defended against the fraudulent conveyance and counterclaimed for attorney fees and for damages resulting from First Fidelity's lis pendens claim. Judgment was entered in favor of Larry and Susan Matthews against First Fidelity. The trial court also awarded attorney fees and costs to Larry and Susan Matthews.

The following issues are raised on appeal:

1. Whether there was sufficient evidence that Larry Matthews had any knowledge of the assignment of the escrow account as security for Michael Matthew's promissory notes to First Fidelity.

4

2. Whether the account debtor, Larry and the assignor, Michael, could make a new agreement and terminate the escrow account as long as First Fidelity failed to intervene.

3. Whether the agreement between the account debtor, Larry and the assignor, Michael constituted a transaction which had the effect of hindering, delaying or defrauding First Fidelity.

First Fidelity contends the District Court erred by ruling there was not sufficient proof that Larry Matthews had any knowledge of the assignment of the escrow account as security for Michael's notes to First Fidelity.

First Fidelity made two loans to Michael. Accordingly, Michael executed two promissory notes in favor of First Fidelity. As security for the note, Michael executed a written assignment to First Fidelity to all monies due from the promissory note by Larry held in escrow. Larry testified that he did not know of the assignment until after he made the subsequent agreement with Michael to discharge the debt and satisfy the mortgagor.

We are confined to determining whether there is substantial credible evidence to support the District Court's findings. Cameron v. Cameron (1978), 179 Mont. 219, 227, 587 P.2d 939, 944; In the Matter of the Estate of Latray (1979), 183 Mont. 141, 598 P.2d 619. We hold substantial, credible evidence supports the District Court's findings that Larry did not have notice of the assignment.

First Fidelity next argues, since the escrow agent was given notice of the assignment of Michael's right to the monies due from the promissory note by Larry, then such notice is imputed to Larry.

5

Section 28-10-101, MCA, states: "An agent is one who represents another, called the principal, in dealings with third persons. Such representation is called agency." The First State Bank of Malta was the designated escrow agent for the purpose of representing Larry and Michael, the principals, in dealing with the Federal Land Bank of Glasgow. It is well settled that an escrow agent is the agent of both parties to such a transaction. Ryder v. Young (Cal. 1935), 50 P.2d 495. Also see Shreeves v. Pearson (1924), 194 Cal.App. 699, 230 P. 448. On consummation of the contract and deposit, the escrow holder is generally considered the agent by both parties and he owes an obligation to each party measured by an application of the ordinary principles of agency. Rianda v. San Benito Title Guarantee Co. (1950), 35 Cal.2d 170, 217 P.2d 25. An agency relationship existed between Larry and Michael; and the First State escrow holder. However, it is the scope of this agency relationship which is at issue.

Section 28-10-102, MCA states, "An agent for a particular act or transaction is called a special agent. . ." Both parties agree that the First State escrow holder was a special agent. The escrow agent was directed to perform two particular acts. Its first duty was to accept payment from Larry to see that the Federal Land Bank of Glasgow was paid. Here, the escrow holder was Larry's agent. When the Federal Land Bank had its money, the escrow holder ceased to be Larry's agent. The escrow holder's second duty was to deliver any remainder of the payment according to the instructions of Michael. At this point, the bank was an agent to Michael.

6

It was incumbent upon First Fidelity to ascertain the scope of First Bank's escrow agency authority. "A person dealing with a special agent is bound at his peril to ascertain the scope of the agency's authority." Schultz v. Peake (1978), 178 Mont. 261, 583 P.2d 425. In Phelps v. Union Central Life Ins. (1937), 105 Mont. 195, 71 P.2d 887, this Court stated:

> "'When one deals with a special agent or an agent who has only special authority to act for his principal, he acts at his peril, for he must acquaint himself with the strict extent of the agent's authority and deal with the agent accordingly. Such third person must inquire into the extent of the agent's authority; he is not justified in relying upon any appearance of authority except that to which is directly deducible from the nature of the authority actually conferred. The reason for this is that if the power of an agent is special and limited, it must be strictly pursued and construed, with the result that neither the agent nor a third person dealing with him as such can claim that the agent had a power which they had not a right to understand was actually conferred.'"

The foregoing rules are firmly established in this jurisdiction. Barrett v. McHattie (1936), 102 Mont. 473, 59 P.2d 794; Benema v. Union Central Life Ins. Co. (1933), 94 Mont. 138, 21 P.2d 69; Moore v. Skyles (1905), 33 Mont. 135, 82 P. 799.

First Fidelity was unaware that the escrow agent's power to act for Larry was limited. The record shows that First Fidelity had no idea what authority the escrow holder had until after the first payment was made a year later. Moreover, the escrow agent had no duty to inform First Fidelity of the transaction. The escrow holder only was obligated to strictly adhere to the instructions as provided in the escrow agreement. Other jurisdictions have

7

universally followed this policy of limited agency. Blackburn v. McCoy (Calif. 1934), 37 P.2d 153; Nelson v. Ashton-Jenkins Co. (Utah 1925), 242 P. 408. We hold the notice of the assignment to the escrow holder, First State Bank of Malta, was not imputed to Larry.

First Fidelity next argues because there was an effective assignment from Michael to First Fidelity of an account debt, the account debtor, Larry and the assignor, Michael, could not reach a new agreement whereby the debt assigned was extinguished.

Michael assigned the monies due under a promissory note from Larry to First Fidelity to secure a loan. This constituted a secured transaction. The rights of the parties to an assignment of money due form a promissory note when given to secure a debt is governed by Chapter IX of the Uniform Commercial Code. Section 30-9-102, MCA is Montana's incorporation of this section.

Of particular significance to this case is section 30-9-318(3), MCA, which provides in part:

> "The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must seasonably furnish reasonable proof that the assignment has been made, and unless he does so the account debtor may pay the assignor."

Other courts have interpreted the requirements of this section in order to make an assignment effective against the account debtor. The Fifth Circuit Court of Appeals has stated:

8

". . . in order for there to be an effective assignment under § 9-318(3), the account debtor must be notified of two things. First, he must receive notice that the 'amount due or to become due has been assigned.' Second, the account debtor must also be notified that 'payment is to be made to the assignee.' See, First National Bank of Rio Arriba v. Mountain States Telephone and Telegraph Co., 91 N.M. 126, 571 P.2d 118 (1977); First National Bank of East St. Louis v. Board of Education, District No. 189, 68 Ill.App.3d 21, 24 Ill.Dec 670, 385 N.E.2d 811 (1979)." Haas v. Metro Goldwyn Mayer (5th Cir. 1980), 617 F.2d 1136, 1139.

First Fidelity argues the account debtor, Larry received notice of the assignment. First Fidelity claims a copy of the assignment and a notice of assignment was sent to the escrow agent. As a result, notice to the agent is imputed to the principal. First Fidelity also contends the account debtor, Larry, was notified that the balance of the payment was to be made to First Fidelity. However, Larry claims the U.C.C. provides even if the account debtor, Larry had notice of the assignment, he can continue to pay the assignor, Michael, as long as the assignee, First Fidelity permits him to do so. Section 9-318 of the Uniform Commercial Code provides:

"The account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to made to the assignee. A notification which does not reasonably identify the rights assigned is ineffective. If requested by the account debtor, the assignee must reasonably furnish reasonable proof that the assignment has been made and unless he does so the account debtor may pay the assignor."

We find the situation the draftsmen of the code were referring to is before us. The purpose for the provision

requiring notice that "payment is to be made to the assignee" is to allow for commercial situations where accounts are used as collateral to secure a loan repayment. The borrower, in the instant case, Michael retained the right to collect the account and the assignee, First Fidelity's right of collection would ripen only upon default of the borrower, Michael. Such a transaction is referred to as an "indirect collection." 4R Anderson, Uniform Commercial Code. Therefore, subject to this indirect collection situation, the account debtor, Larry, could not be expected to pay the assignee until he had been instructed. Furthermore, First Fidelity was aware of the $3,835.96 deduction from the payment Larry had made to Michael. This amount was not paid to First Fidelity. The First State Bank escrow holder informed First Fidelity that the short payment was the result of a prior dealing between Michael and Larry on the escrow note. First Fidelity made no objection to the payment made to Michael and the debtor, Larry was entitled to continue to pay the assignor, Michael. We therefore uphold the District Court's conclusions that the payor and payee could make a new agreement and terminate the escrow account as long as third parties do not intervene.

First Fidelity raises as its last issue for appeal the "Satisfaction of Mortgage" executed by Michael and delivered to Larry and Susan. First Fidelity argues the settlement of the debt constituted a fraudulent conveyance which hindered and delayed the collection due First Fidelity under its note from Michael. First Fidelity contends that circumstantial evidence permits an inference of the defendant's intent to defraud First Fidelity. First Fidelity strongly argues due to the relationship between Michael and Larry; the $10,000

10

paid on a note for $217,958.75, among other factors, established "badges of fraud."

First Fidelity primarily relies on a decision rendered by this Court in 1981, Montana Nat. Bank v. Michels (Mont. 1981), 631 P.2d 1260, 38 St.Rep. 334. There, a creditor bank sued a debtor husband and wife to set aside a fraudulent conveyance. The husband conveyed to his wife all of his interest in a contract for deed for the sum of one dollar. At the time of the conveyance the husband owed the bank $81,504.49. The district court set aside the conveyance. The district court was affirmed. Montana Nat. Bank is clearly distinguishable from the case at bar. Here, the District Court ruled the evidence did not support a finding of fraud. The District Court held there was not sufficient proof that Larry had any knowledge of the assignment of the paid escrow account as security for Michael's notes to First Fidelity. Larry Matthews testified that he "Got to computing it out."

(i) Michael's land was subject to a debt to the Federal Land Bank of Malta in the amount of $499,000 over thirty-five years.

(ii) Larry bought the land and was to pay Michael $380,000 over twenty years. Larry's payments were to be used to pay the Land Bank first so that the debt would not go into default.

(iii) After Larry's payments to Michael were completed, there would still be fifteen years of payments to be made to the Land Bank. Even though Michael was obligated to make the payments, he would have no means to do so and Larry would have no security to see that he did.

Larry contends a change in arrangement was necessary or else he had to default. Under these circumstances, Michael

accepted the $10,000 payment and Larry took over the Land Bank payment. The District Court found that Larry Matthews had dealt in good faith, paid his obligations in full and was not responsible for the debts of Michael Matthews. We hold the evidence did not support a finding of fraud.

The judgment of the District Court is affirmed. This case is remanded to the District Court for a hearing on attorney fees and costs for the trial and appeal.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices