**Adolph SCHOEPE, sole surviving partner on Behalf of Lion Hill Mines, Plaintiffs,**

v.

**ZIONS FIRST NATIONAL BANK, a federal corporation, and John Does 1–10, Defendants.**

**Civil No. 89–C–449W.**

United States District Court, D. Utah, C.D.

Nov. 13, 1990.

L. Rich Humpherys and Lee C. Henning, Salt Lake City, Utah, for plaintiffs.

Gary R. Howe and R. William Orton, Salt Lake City, Utah, for defendant Zions First Nat. Bank.

## MEMORANDUM DECISION AND ORDER

WINDER, District Judge.

This matter is before the court on defendant Zions First National Bank's ("Zions") motion for summary judgment on plaintiff Lion Hill Mines' ("Lion Hill") claim for breach of fiduciary duty. That motion focused on the issue of proximate cause. A hearing on that motion was held October 25, 1990. Following the hearing, the court requested the parties to identify those portions of the record bearing on the issue of Zions' duty as escrow agent. Counsel for Zions and Lions Hill complied with the court's request by letters dated October 29, 1990. A supplemental hearing on the duty issue was held October 31, 1990. During both hearings Lion Hill was represented by L. Rich Humpherys and Lee C. Henning. Zions was represented by Gary R. Howe, R. Willis Orton and Ronald F. Price. Before the hearings, the court carefully considered the memoranda, affidavits, depositions and other pleadings submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to this motion and now renders the following memorandum decision and order.

## BACKGROUND

The facts relevant to this motion are not in dispute. On or about October 1, 1980, Lion Hill, a Nevada joint venture/partnership, entered into a contract (the "1980 Contract") to sell certain mining properties in Douglas County, Nevada, to Pacific Silver Corporation ("Pacific Silver"). On or about February 6, 1981, pursuant to the terms of the 1980 Contract, Lion Hill and Pacific Silver entered into an Escrow Agreement with Zions. Under the Escrow Agreement, Pacific Silver agreed to pay installments of the purchase price of the mine properties to Zions, who, as escrow agent, would deliver the payments to Lion Hill.

On or about July 29, 1982, Lion Hill entered into an agreement with Pacific Silver to extend the payment schedule of the 1980 Contract. The 1982 payment extension, which decreased early payments in favor of increasing later payments, was made a part of the Escrow Agreement.

On or about March 20, 1984, Zions made a $1.6 million loan to Pacific Silver, and took a recorded assignment of Pacific Silver's rights under the 1980 Contract as partial security for the loan. Zions made this loan without the knowledge or consent of Lion Hill. On or about January 14, 1985, and again without the knowledge or consent of Lion Hill, Zions made a $700,000 loan to Pacific Silver.

On or about November 4, 1985, Lion Hill entered into an agreement with Pacific Silver in which the payment schedule on the 1980 Contract again was modified to decrease current payments and increase later payments. The 1985 payment extension reduced Pacific Silver's 1985 payment from $300,000 to $100,000 and reduced the 1986 payment from $350,000 to $150,000. The 1985 payment extension subsequently was made part of the Escrow Agreement.

After making the $150,000 payment in 1986, Pacific Silver made no further payments under the 1980 Contract and the contract subsequently was terminated. Lion Hill claims it would not have agreed to the 1985 payment extension had it known of the $2.3 million in loans Zions previously had made to Pacific Silver. Lion Hill claims that Zions, acting as escrow agent, owed it a duty to disclose these loans, and that such nondisclosure was the proximate cause of Lion Hill's damages. Lion Hill claims these damages include the payments it would have received from Pacific Silver had the 1985 payment extension not been made.

## STANDARD OF REVIEW

■ Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact,

**1086**

and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Applied Genetics Int'l v. First Affiliated Securities*, 912 F.2d 1238, 1241 (10th Cir.1990).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir.1990).[1] The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

■ In considering a summary judgment motion, this court does not weigh the evidence but instead inquires whether a reasonable jury, faced with the evidence presented, could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).[2] Finally, all material facts asserted by the moving party shall be deemed admitted unless specifically controverted by the opposing party. D.Utah Civ.R.P. 5(e).

1. The summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

2. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

3. The only claim remaining in this lawsuit, in addition to the claim at issue here, is Zions'

## DISCUSSION

The issue which this court considers to be dispositive of this motion is whether Zions, acting as escrow agent, owed a duty, as a matter of law, to disclose to Lion Hill the loans Zions made to Pacific Silver.[3] Because this court sits in diversity, it must ascertain and apply Utah state law. The parties have not cited nor could this court find any Utah authority discussing the contours of an escrow agent's duty to disclose information to its principals. Two Utah Supreme Court cases, however, merit examination for the guidance they give regarding an escrow agent's duties in general.

### A. *Utah Case Law on Escrow Agency*

In *Freegard v. First Western Nat'l Bank*, 738 P.2d 614 (Utah 1987), the Utah Supreme Court found allegations that an escrow agent breached its agreement by failing to pay over insurance proceeds were sufficient to state a cause of action against the escrow agent for breach of fiduciary duty. *See id.* at 616. The trial court in *Freegard* held that the escrow agent's contractual obligation to collect payments and disburse them to seller did not include a duty to pay over insurance proceeds collected when the real property that was the subject of the sale was destroyed by fire.

In reversing the trial court, the Utah Supreme Court concluded that the complaint adequately stated a cause of action against the escrow agent based upon the fiduciary duty the agent owed to its principal. *See id.*[4] The court found that the

counterclaim for compensatory damages, attorneys' fees and costs. That counterclaim is not before the court.

4. In so holding, the Utah Supreme Court cited with approval *National Bank v. Equity Investors*, 81 Wash.2d 886, 910, 506 P.2d 20, 35 (1973). *National Bank* held that an escrow agent's duties are defined by the escrow instructions and that the agent becomes liable to its principals only for damage proximately resulting from breach of the instructions or from exceeding authority conferred by the instructions. *See id.*, 506 P.2d at 35.

escrow agent assumed the role of agent to both parties to the transaction and was required to exercise reasonable skill and ordinary diligence in disbursing the funds entrusted to it. *Id.* Thus, the court held, whether the escrow agent breached its agreement by failing to pay over the insurance proceeds was an issue of fact that appeared on the face of the complaint. *Id.*

In *Nelson v. Ashton–Jenkins Co.*, 66 Utah 351, 242 P. 408 (Utah 1925), the Utah Supreme Court held that the defendant, who was acting as both real estate broker and escrow agent, did not breach any duty to plaintiff buyer by failing to disclose an agreement with sellers whereby defendant received as commission any monies paid for the land over a specified price. *See id.*, 242 P. at 411.

In *Nelson,* Carlquist, an agent of defendant, acted as both broker in the real estate sale between plaintiff and sellers and as the appointed escrow agent for the transaction. Plaintiff claimed Carlquist breached a duty as plaintiff's escrow agent by failing to disclose his commission agreement with the sellers. Drawing a legal distinction between Carlquist's two roles, the Utah Supreme Court found that Carlquist's rights as a real estate broker did not conflict with his duties as plaintiff's escrow agent. On the escrow duty the court stated:

> The plaintiff received exactly what she bought and paid for, and it therefore appears that the Ashton–Jenkins Company discharged every obligation imposed upon it by the terms of the escrow agreement.

*Id.* at 410. On Carlquist's failure to disclose his commission arrangement the court stated:

> Carlquist was a real estate broker, and had the right to negotiate purchases and

sales of real estate for such compensation as might be agreed upon or as was authorized by custom. The plaintiff having refused to employ him in the matter in controversy, it was not a breach of either confidence or duty for him to accept employment from [the sellers].

*Id.* at 411. The court rejected plaintiff's argument that Carlquist became a general agent through the escrow relationship and therefore owed a duty to disclose the commission arrangement. Rather, an escrow agent's duty was "to do and perform what it is required to do by the terms of the escrow agreement." *Id.* at 410.

### B. *Nature of the Escrow Agency*

Both *Freegard* and *Nelson* are factually dissimilar from the instant case. In *Freegard,* the issue was whether the escrow agent breached its fiduciary duty by failing to pay over proceeds as required by the escrow agreement. Here the issue is whether an escrow agent has a fiduciary duty to disclose loans it makes to one of its principals.

▉ *Nelson* concerned the legal obligations of a person acting as both broker and escrow agent in a real estate transaction, a situation not present in this case. In addition, the holding in *Nelson* is questionable in light of the increased state regulation[5] and developments in the limited agency doctrine[6] which have occurred since 1925. Nevertheless, when presented with a novel issue of state law, a federal court must predict how the state's highest court would decide the issue. *Weiss v. United States,* 787 F.2d 518 (10th Cir.1986). In doing this, a federal court may examine all resources, including considered dicta, treatises, law reviews and well-reasoned authority from other jurisdictions. *Groff*

5. *See* Utah Code Ann. § 61–2–1 to –22 (1989 & Supp.1990) (codification of state regulatory scheme for real estate brokers).

6. *See, e.g., Berry v. McLeod,* 124 Ariz. 346, 604 P.2d 610, 616 (1979) (escrow agent has fiduciary duty to disclose known fraud committed on a party to an escrow); *American State Bank v. Adkins,* 458 N.W.2d 807, 810 (S.D.1990) (same); *Hannon v. Western Title Ins. Co.,* 211 Cal.App.3d

1122, 260 Cal.Rptr. 21, 24 (1989) (escrow agent has duty to disclose material facts acquired in the course of the agency that would reasonably affect the principal's judgment); *see also* Restatement (Second) of Agency § 389 (1958) ("Unless otherwise agreed, an agent is subject to a duty not to deal with his principal as an adverse party in a transaction connected with his agency without the principal's knowledge.").

*v. Continental Ins. Co.*, 741 F.Supp. 541, 545 (E.D.Pa.1990).

■ Despite their factual dissimilarity, the court believes the following three legal propositions may be plumbed from *Freegard* and *Nelson*. First, the escrow agent is a special or limited agent whose authority derives from the escrow agreement and which is limited by the express and implied terms of that agreement. *Accord Gurley v. Bank of Huntsville*, 349 So.2d 43, 45 (Ala.1977); *Hannon v. Western Title Ins. Co.*, 211 Cal.App.3d 1122, 260 Cal.Rptr. 21, 24 (1989); *First Fidelity Bank v. Matthews*, 692 P.2d 1255, 1258–59 (Mont.1984); *American State Bank v. Adkins*, 458 N.W.2d 807, 810 (S.D.1990); 28 Am.Jur.2d *Escrow* § 11 (1966 & Supp.1990).

■ Second, the escrow agent owes a fiduciary duty to all parties to the escrow agreement. *Accord Gurley*, 349 So.2d at 45; *Burkons v. Ticor Title Ins. Co.*, 798 P.2d 1308 (Ariz.App.1989); *Hannon*, 260 Cal.Rptr. at 24; *First Fidelity Bank*, 692 P.2d at 1258; *American State Bank*, 458 N.W.2d at 810; *Trevino v. Brookhill Capital Resources*, 782 S.W.2d 279, 281 (Tex. App.1989); *Reeves v. McClain*, 56 Wash. App. 301, 783 P.2d 606, 609 (1989).

■ Finally, the scope of the escrow agent's duty is governed by the escrow agreement, and includes, at minimum, an obligation to exercise reasonable skill and ordinary diligence in following the escrow instructions. *Accord Gurley*, 349 So.2d at 45; *Burkons*, 798 P.2d at 1310; *Hannon*, 260 Cal.Rptr. at 24; *First Fidelity Bank*, 692 P.2d at 1259; *American State Bank*, 458 N.W.2d at 810; *Trevino*, 782 S.W.2d at 281; *Reeves*, 783 P.2d at 609.

■ Application of these legal principles to the facts establishes that Zions' agency relationship with Pacific Silver and Lion Hill was of a limited nature. The limiting feature was the escrow agreement entered into between the parties. An escrow agent, Zions was not authorized to act beyond that which was necessary to carry out the escrow instructions.

Zions owed a fiduciary duty to Pacific Silver and Lion Hill. That duty included an obligation to exercise reasonable skill and ordinary care in following the escrow instructions. Although Zions and Lion Hill dispute exactly which documents constitute the Escrow Agreement, they agree that a document entitled Schedule of Items, Fees and Instructions ("Schedule of Items") constitutes the essence of that agreement. The Schedule of Items, which was signed by all the parties, contains a description of the property to be held in escrow, the escrow fees, a schedule of payments and disbursement instructions.

It is uncontested that Zions exercised reasonable skill and ordinary diligence in following the escrow instructions contained in the Schedule of Items. It also is uncontested that the Schedule of Items contains no language imposing a duty on Zions to disclose any information to its principals. Lion Hill, however, argues that under the common law, Zions' fiduciary duty encompassed a duty to disclose the loans Zions made to Pacific Silver. The court does not agree. Based on the agency principles enunciated by the Utah Supreme Court in *Freegard* and *Nelson*, the public policies underlying the doctrine of limited agency and the experience of other jurisdictions, this court holds that Zions had no duty to disclose its loans to Pacific Silver.

### C. *The Escrow Agent's Duty of Disclosure*

More than 50 years ago, a California appellate court in *Blackburn v. McCoy*, 1 Cal.App.2d 648, 37 P.2d 153, 155 (1934) articulated the purpose and rationale of the escrow agency in words equally applicable today.

> The usual purpose that prompts the creation of an escrow is the desire of persons dealing at arm's length with each other to have their conflicting interests handled by one person in such a manner as to adequately protect the rights of each of the parties to the transaction. The fundamental principles underlying the obligations of a general agency would not, and could not, tolerate the operation of an escrow, such as we have here, as a general agency. If the several

escrow instructions create in the escrow holder an agency, it must be one limiting the obligations of the escrow holder to each party to the escrow in accordance with the instructions given by such party. This in practice has been and is the underlying principle that has made possible the development of the escrow method of handling transactions which has become such an important factor in conveyancing and other business activities. *Blackburn*, 37 P.2d at 155–56. The Utah Supreme Court has endorsed this concept of limited agency. *See, e.g., Naujoks v. Suhrmann*, 337 P.2d 967, 969 (Utah 1959) ("It is appreciated that the fact that one may be an agent for one purpose does not make him an agent for every purpose, but the agency is limited to acts within the scope of authorized duties.").

Consistent with the purpose and rationale of the escrow agency articulated in *Blackburn*, courts have expanded the scope of the escrow agent's fiduciary duty to include a duty to disclose information to its principals. This duty has been held to include an obligation to disclose information about a known fraud being committed on a party to the escrow agreement, *see, e.g., Berry v. McLeod*, 124 Ariz. 346, 604 P.2d 610, 616 (1979), as well as a duty to " 'communicate to his principal knowledge acquired in the course of his agency with respect to material facts which might affect the principal's decision as to a pending transaction, particularly where ... he knows that the principal is looking to him for protection as to those very facts of which he has knowledge.' " *see, e.g., Hannon v. Western Title Ins. Co.*, 211 Cal. App.3d 1122, 260 Cal.Rptr. 21, 24 (1989) (quoting *Contini v. Western Title Ins. Co.*, 40 Cal.App.3d 536, 547, 115 Cal.Rptr. 257, 263–64 (1974)).

Although the Utah Supreme Court has not held that escrow agents have a duty of disclosure regarding "known fraud" or "material facts" acquired in the course of the agency, this court believes these duties are logically encompassed within the fiduciary duty an escrow agent owes its principals. Measuring Zions' conduct against these duties, however, the court finds that Zions' failure to disclose the loans it made to Pacific Silver does not fall within either duty.

The escrow agent's duty to disclose known fraud is not implicated here because Lion Hill does not allege that Zions was engaged in fraud nor that it had knowledge of a third party committing fraud upon Lion Hill. Similarly, the escrow agent's duty to disclose "material facts" is not implicated because the alleged material facts (knowledge of the loans) were not acquired in the course of Zions' escrow agency but rather through a commercial loan transaction that was unrelated to the escrow. Further, Zions' knowledge of the loans was not "material" because such knowledge had no bearing on Zions' duties under the Escrow Agreement. *C.f. Contini v. Western Title Ins. Co.*, 40 Cal.App.3d 536, 115 Cal.Rptr. 257, 263 (1974) (failure of escrow agent to disclose lis pendens and unrecorded judgment on title to land constitutes a breach of fiduciary duty to disclose "material facts" acquired in course of agency).

In sum, this court finds, as a matter of law, that Zions did not breach its fiduciary duty of disclosure, if any, by failing to inform Lion Hill of the loans it made to Pacific Silver. To hold otherwise would place the escrow agent in the untenable position of having to decide which of its non-escrow related activities it should disclose to its principals.

The court believes the burden of obtaining such information is better placed with the principals. Lion Hill, for instance, could have required Pacific Silver to submit a financial statement before it agreed to the payment extensions. Alternatively, Lion Hill could have contracted for such disclosure from Zions in the Escrow Agreement. The doctrine of limited agency, sound commercial practice and equity all argue for requiring Lion Hill, as principal, to bear the burden of protecting its economic interest rather than to place such a burden on Zions, as escrow agent.

## CONCLUSION

Because there are no genuine issues of material fact and the court finds, as a

matter of law, that Zions did not breach its fiduciary duty to Lion Hill, summary judgment is properly granted for Zions. Because this ruling disposes of plaintiff's only remaining claim, and defendant's counterclaim remains to be adjudicated, this court finds that under Rule 54(b) of the Federal Rules of Civil Procedure there is no just reason to delay entry of final judgment for defendant on all of plaintiff's claims.

Accordingly, based on the foregoing and good cause appearing,

IT IS HEREBY ORDERED that

1. Defendant's motion for summary judgment is granted.

2. Defendant is entitled to have final judgment entered in its favor and against plaintiff with respect to all claims in plaintiff's complaint.

3. Plaintiff's complaint is dismissed with prejudice and on the merits.

4. This order and a final judgment entered this date shall suffice as the court's ruling in this matter and no further order need be prepared by counsel.