John and Christine POWELL and G.
Parke Rouse, III, Plaintiffs,

v.

H.E.F. PARTNERSHIP, Hawk Mountain Corporation, Dartmouth Banking Company, and Carroll, Sussman & Obuchowski, Defendants.

Civ. A. No. 91–60.

United States District Court,
D. Vermont.

Jan. 31, 1992.

(6th Cir.1989), *en banc reh'g denied,* 1990 U.S.App. LEXIS 4881 (6th Cir.1990).

Michael L. Burak, Brian J. Sullivan, Thomas R. Melloni, Burak & Anderson, Burlington, Vt., for plaintiffs John Powell and Christine Powell.

G. Parke Rouse, III, pro se.

Andre D. Bouffard, Downs Rachlin & Martin, Burlington, Vt., for defendant Dartmouth Banking Co.

## OPINION AND ORDER

FRED I. PARKER, Chief Judge.

Plaintiffs, investors in a hotel-condominium project called the "Inn at Essex" in Essex Junction, Vermont, brought suit against the developer of the project (H.E.F. Partnership), the parent corporation of one of H.E.F.'s general partners (Hawk Mountain Corporation), the major lender for the project (Dartmouth Banking Company, now

Dartmouth Bank), and the law firm which represented the developer in offering "units" of the Inn for sale to investors (Carroll, Sussman & Obuchowski). Alleging that they were fraudulently induced to purchase units at the Inn, plaintiffs seek damages under the Securities Exchange Act of 1934, 15 U.S.C. Chapt. 2B, the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, the Vermont Securities Act, 9 V.S.A. § 4224a, and theories of common-law breach of fiduciary duty, fraud, and unjust enrichment. Essentially, plaintiffs allege that H.E.F., with the knowledge and acquiescence of Dartmouth Bank, misrepresented the status of sales of units at the Inn and failed to disclose material information indicating the financial weakness of the project, causing plaintiffs to invest in the project to their considerable detriment.

Dartmouth Bank (hereafter "Dartmouth") moves to dismiss the several claims made against it[1] for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Assuming the truth of the allegations in the complaint and construing them in the light most favorable to the plaintiffs, the court finds that the allegations of federal securities fraud, breach of fiduciary duty and unjust enrichment are sufficient to state a claim against Dartmouth, the allegations of a RICO violation are insufficiently specific to satisfy the requirements of Fed.R.Civ.P. 9(b), and the state securities fraud claim is improperly premised on an amendment to the Vermont statutes that was not in effect at the time of the relevant acts, but otherwise is properly pleaded. The motion to dismiss is accordingly denied as to Counts III, V and X, and granted with leave to amend as to Counts IV and IX.

## I. FEDERAL SECURITIES FRAUD

■ Count III of the complaint alleges that Dartmouth is an aider and abettor of federal securities fraud. For purposes of its motion, Dartmouth does not contest that plaintiffs have adequately stated a claim of primary securities fraud by H.E.F. Dartmouth maintains, however, that plaintiffs have failed to allege the requisite elements of a claim of *aiding and abetting* a securities fraud. These elements are that the alleged aider-abettor had knowledge of the primary fraud and rendered substantial assistance in perpetrating the fraud. *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir.1983); *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.*, 602 F.2d 478, 483 n. 5 (2d Cir.1979), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980).

■ The element of knowledge or scienter is liberally understood, in this Circuit, to encompass the mental state of recklessness in contexts where "the alleged aider and abettor owes a fiduciary duty to the defrauded party." *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38, 44 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978). Dartmouth owed a fiduciary duty to plaintiffs because, if for no other reason, it acted as plaintiffs' agent by holding the purchase money in an escrow account pending closing. Dartmouth contends its fiduciary duties as an escrow are limited by the express terms of the escrow agreement. Regardless of the agreement's express terms, however, an escrow agent's duty to its principal includes the obligation to disclose information about a known fraud being committed on the principal. *Schoepe v. Zions First Nat'l Bank*, 750 F.Supp. 1084, 1089 (D.Utah 1990). Dartmouth had an obligation to inform plaintiffs if it learned of a securities fraud being perpetrated against them.

■ The scienter element may therefore be satisfied by proof that Dartmouth acted with recklessness or reckless disregard for the truth. Count III of the complaint, consequently, must minimally plead that Dartmouth acted with a reckless state of mind

---

**1.** The following counts of the complaint purport to state claims against defendant Dartmouth: Count III, aiding and abetting federal securities law violations; Count IV, RICO violation; Count V, breach of fiduciary duty; Count IX, aiding and abetting Vermont securities law violations; and Count X, unjust enrichment.

in order to withstand a Rule 12(b)(6) motion to dismiss. Mere negligence will not suffice. "Liability premised on the recklessness of one's fiduciary in failing to perform his duty to disclose is a far cry from awarding damages for simple negligence." *Rolf,* 570 F.2d at 45.[2]

■ The pleadings satisfy this requirement. The complaint contains numerous allegations of Dartmouth's knowledge of circumstances which indicated that a fraud was being perpetrated on plaintiffs, such that Dartmouth either knew of the fraud or the fraud should have been obvious to Dartmouth. See *id.* at 47. For example, plaintiffs allege that Dartmouth knew that many of the "sales" advertised by the project managers were in fact "sham sales" which would never proceed to closing as the "buyers" were undercapitalized insiders of H.E.F. and Hawk Mountain, that other purchasers had manifested a clear intent not to proceed to closing, and that the project was undergoing significant financial hardships. A reasonable juror could well conclude, if the allegations are proved at trial, that evidence of fraud was so plain and obvious that Dartmouth either knew of it or acted recklessly by ignoring and failing to disclose the fraud.

■ The pleadings also easily satisfy the "substantial assistance" element of aider-abettor liability. Paragraph 77 of the complaint summarizes the allegations pertaining to this element as follows:

Dartmouth provided substantial assistance to the primary securities violation of HEF by:

(a) committing to provide financing for the purchase of securities;

(b) acting as escrow agent for the holding of payment for the purchase of securities;

(c) procuring additional funding sources for the purchase prices of securities;

(d) placing its "badge of approval" on the sale of securities by releasing escrow funds;

(e) ratifying the fraud by releasing escrow funds when it knew or was reckless in not knowing that there were insufficient sales of the Units to consummate closing; and

(f) Dartmouth was a direct participant in the sale of securities since it benefitted each time a unit was sold by receiving all or part of the purchase price as payment on HEF's debt to the Dartmouth.

Assuming the truth of these allegations, and assuming that the sale of the units at the Inn constituted a violation of the federal securities laws in the first instance by H.E.F., it cannot be gainsaid that Dartmouth rendered substantial assistance to the fraud. See *Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 62–63 (2d Cir.1985). "But for" causation is also well pleaded: Had Dartmouth disclosed what it knew or recklessly disregarded, plaintiffs would not have invested in the project.

The motion to dismiss as to Count III is DENIED.

## II. BREACH OF FIDUCIARY DUTY

■ The disposition of Dartmouth's motion to dismiss Count V, which alleges a breach of fiduciary duty, follows from the discussion above. As escrow, Dartmouth had a duty to disclose known fraud; to the extent plaintiffs are able to prove that Dartmouth failed to perform its duty, as alleged, it may be found liable on a theory of breach of fiduciary duty or "negative deceit." See *Sutfin v. Southworth,* 149 Vt. 67, 70, 539 A.2d 986 (1987). " 'The test of liability for failure to disclose facts material to the transaction is some duty, legal or equitable, arising from the relations of

---

**2.** Discussing the lead securities fraud case of *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the *Rolf* court noted: "The Court seems to have recognized that scienter is not a rigid concept encompassing only the definitive intent to accomplish a specific purpose. A less definitive mental state—recklessness—would seem to suffice in certain circumstances and does not run afoul of *Hochfelder's* admonition that liability not be imposed for 'negligent conduct *alone.*' " 570 F.2d at 45 n. 12 (quoting 425 U.S. at 201, 96 S.Ct. at 1385).

the parties, such as that of trust or confidence, or superior knowledge or means of knowledge.'" *Id.* (quoting *Newell Brothers v. Hanson,* 97 Vt. 297, 303–04, 123 A. 208, 210 (1924)). Indeed, even outside its role as escrow, as a lender and participant in the sales of units Dartmouth may have had a duty to disclose to the plaintiffs information that it obtained without substantial investment, much as a seller is required to "disclose that the house he is trying to sell is infested with termites." *Federal Deposit Ins. Corp. v. W.R. Grace & Co.,* 877 F.2d 614, 619 (7th Cir.1989).

The motion to dismiss as to Count V is DENIED.

### III. RICO VIOLATION

■ In Count IV of the complaint, plaintiffs allege that Dartmouth violated the RICO statute. 18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise ... to conduct or participate ... in the conduct of such enterprise's affairs through a pattern of racketeering activity." "Racketeering activity" is defined in § 1961(1) as including federal securities fraud. A "pattern of racketeering activity" must include "at least two acts of racketeering activity" within a ten-year period. § 1961(5). The acts must be related and must amount to, or threaten the likelihood of, "continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 237, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989). Each defendant must have committed (or aided and abetted the commission of) at least two such predicate acts in order to be held liable under the statute. *See United States v. Indelicato,* 865 F.2d 1370, 1384 (2d Cir.) (*en banc*), *cert. denied,* 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989).

■ Dartmouth's challenge to the sufficiency of the RICO count rests on its claim that plaintiffs have failed to adequately allege that Dartmouth engaged in any RICO predicate acts. In light of the discussion above, which concludes that plaintiffs' have stated a claim against Dartmouth of aiding and abetting securities fraud, it follows that at least one RICO predicate act is properly alleged. The complaint also generally alleges that Dartmouth was a member of a RICO "enterprise" that included H.E.F. and Hawk Mountain, and that the members of the enterprise engaged in acts of securities fraud as well as mail and wire fraud. Count IV, however, fails to allege with sufficient particularity, see Fed.R.Civ.P. 9(b), the specific acts by Dartmouth—beyond its participation in the alleged securities fraud scheme—which constitute predicate RICO acts, and it leaves the court unable to analyze whether such acts demonstrate the relatedness and continuity requirements of a RICO pattern. See *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).

The motion to dismiss as to Count IV is accordingly GRANTED, with leave to amend the complaint or supplement the pleadings, should plaintiffs choose to pursue the RICO count.

### IV. STATE SECURITIES FRAUD

■ In Count IX, plaintiffs seek to impose liability on Dartmouth as an aider-abettor to securities fraud under 9 V.S.A. § 4224a. Dartmouth moves to dismiss this count for the same reasons advanced to dismiss the federal security fraud claim, which need not be reiterated, as well as for one additional reason. Dartmouth notes that the acts alleged to be fraudulent took place in 1988 and 1989, prior to the July 1, 1990 effective date of § 4224a. See 1989 (Adj.Sess.), Vt. Laws No. 225, § 14. Dartmouth then argues that the law in effect at the time of the alleged violations did not provide a private right of action for damages against Dartmouth. Although 9 V.S.A. § 4225 (1984) did provide a right of action against an *agent* of a seller who participated or aided in a sale in violation of the act, Dartmouth contends that it was not an agent for purposes of the act. For this proposition, Dartmouth relies upon § 4202(1) which defines "agent" as "salesman."

■ Section 4202, however, begins with the following language: "When used in this chapter the following words, *in addi-*

**96**

*tion to their ordinary meaning,* or unless the context otherwise indicates, shall have the following meanings...." (Emphasis added.) It is the view of this court that Dartmouth, which held the investors' payments in escrow for the developers, operated as an agent, as that term is ordinarily used, for the seller, and the context of § 4225 does not indicate otherwise. Remedial statutes are to be liberally construed. *Grenafege v. Dept. of Employment Security,* 134 Vt. 288, 290, 357 A.2d 118 (1976). Section 4225 is therefore properly interpreted to provide a cause of action against Dartmouth.

Because Count IX is premised on a statutory amendment that was not in effect at the time of the events supporting liability, the motion to dismiss as to Count IX is GRANTED, with leave to amend to reflect the appropriate statutory section.

### V. UNJUST ENRICHMENT

 Count X alleges that Dartmouth, with knowledge or reason to know of fraud in the sales of units at the Inn, benefitted from those transactions. Dartmouth's Rule 12(b)(6) challenge to this cause of action largely reiterates its claim that the complaint fails to allege a basis for finding that Dartmouth knew of any fraud on H.E.F.'s part or owed any duty of disclosure to plaintiffs. As stated above, a duty to disclose and recklessness in failing to do so are sufficiently pleaded. Where a party receives a benefit in a transaction and the retention of the benefit would be inequitable, Vermont law may permit recovery to an injured party under a theory of unjust enrichment. *In re Estate of Elliott,* 149 Vt. 248, 252, 542 A.2d 282 (1988). The motion to dismiss as to Count X is DENIED.

### CONCLUSION

Defendant Dartmouth Bank's motion to dismiss (docket # 24) is DENIED IN PART AND GRANTED IN PART. Counts IV and IX of the complaint are dismissed. Plaintiffs are given leave to file an amended complaint or supplemental pleadings on or before February 21, 1992 with respect to those counts.

The present order renders consideration of Dartmouth's Motion for Protective Order in the Nature of Stay of Discovery (docket # 23) and Plaintiffs' Motion for Continuance to Obtain Discovery (docket # 33) unnecessary; said motions are accordingly DENIED as moot.