**EHLERS & EHLERS ARCHITECTS, a Utah corporation, Plaintiff and Appellant,**

**v.**

**CARBON COUNTY, a public corporation, Defendant and Appellee.**

**No. 900051–CA.**

Court of Appeals of Utah.

Feb. 1, 1991.

L. Charles Spafford, Chase Kimball, Scott Mitchell (argued), Spafford & Spafford, Salt Lake City, for plaintiff and appellant.

John E. Schindler (argued), County Atty.'s Office, Price, for defendant and appellee.

Before BENCH, GARFF and GREENWOOD, JJ.

## OPINION

GARFF, Judge:

Appellant, Ehlers & Ehlers Architects, Inc.,[1] appeals from a summary judgment entered in favor of appellee Carbon County on November 1, 1989. The threshold issue is whether there is a dispute of a material fact and whether summary judgment was appropriate.

## FACTS

Except as indicated, the following facts are summarized from the undisputed facts as set forth by Carbon County and as agreed to by Ehlers, with two exceptions. The parties contracted on February 1, 1978 for Ehlers's architectural services regarding a proposed building project known as the Carbon County Criminal Justice Center (the Center). The Center was to include remodeling of court facilities, and commission chambers and expansion of the jail.

Ehlers provided services through the design and development phases of the project and presented the development drawings to the Carbon County Commission on Febru-

ary 27, 1981. Both parties agree that completion of the project was subject to a bond election held in 1981, which election failed. Carbon County's position is that the Center project terminated upon failure of the bond election. The County paid Ehlers a negotiated settlement of $56,000 for services performed on the first two phases of the project.[2]

The new project, the Tri-Court Complex (the Complex), commenced in 1985, contains facilities for the District, Juvenile, and Circuit Courts for the Seventh Judicial District. The Complex includes courtrooms and rooms for support staff. Unlike the plans for the Center, the Complex has no jail facilities nor county commission rooms, nor is it an addition to existing facilities, rather it is a separate building entirely distinct from the existing courthouse and jail.

Ehlers, in his response memorandum to the County's motion for summary judgment, claims not to dispute the County's version of the facts "with some important exceptions." Those exceptions are as follows: Ehlers denies that the project terminated upon failure of the 1981 bond election. Ehlers claims that the failure of the bond election meant that the project would only be indefinitely suspended. More to the point, Ehlers claims that the Complex was a continuation or revival of the original Center project. Ehlers claims that on January 8, 1985, he was told by Lee Semken, a Carbon County commissioner, to go forward on the Center project. According to Ehlers's deposition, after this telephone call, Semken asked Ehlers to meet him in his office on January 15, 1985. The meeting, held in the commission chambers, was attended by Semken, the commission chair, and Floyd Marx and Guido Rachiele, the other two commission members. At the meeting, the men discussed the project and inspected the proposed building site.

1. At the time of the action, Ehlers & Ehlers Architects, Inc. had a sole shareholder, Jack Ehlers. Because it serves no purpose to this opinion to distinguish between them, both the corporate entity and Mr. Ehlers will be referred to as Ehlers.

2. In his deposition, Ehlers agreed "that if the project was dead, instead of the amount due, $76,898.08, ... I would accept in full payment $56,000." The project died with the failure of the bond issue in 1981.

In reliance on the Semken telephone call, Ehlers claims he went to considerable expense to prepare for the project, including doubling the size of his office, hiring new personnel, and contacting mechanical, structural, and electrical engineers to ask them to put aside other projects to help him.

When his services were not used for the Complex, Ehlers brought an action against Carbon County in 1986 seeking damages of approximately $64,000. The County moved for summary judgment to dismiss Ehlers's action and the court so ordered.

In its ruling, the court noted that Ehlers accepted the undisputed facts as stated by the County "except for two unimportant aspects." The court then ruled for the County "based upon those undisputed facts...." The trial court held that the Complex, started in 1985, "was a different and distinct project which had no relation to the 1978 contract and the subject thereof." In its judgment, entered November 15, 1990, the court dismissed Ehlers's complaint, holding that no agreement existed between the parties authorizing Ehlers to proceed on either project. The County was awarded costs of $388.49. The same day, the court also denied Ehlers's motion for reconsideration. Ehlers appeals the summary judgment.

## SUMMARY JUDGMENT

■ Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Transamerica Cash Reserve, Inc. v. Dixie Power & Water, Inc.*, 789 P.2d 24, 25 (Utah 1990). We view the facts and inferences to be drawn therefrom in the light most favorable to the losing party and affirm only where it appears there is no genuine dispute as to any material issues of fact, or where, even according to the facts as contended by the losing party, the moving party is entitled to judgment as a matter of law. *D & L Supply v. Saurini*, 775 P.2d 420, 421 (Utah 1989) (quoting *Themy v. Seagull Enter., Inc.*, 595 P.2d 526, 528–29 (Utah 1979)). *See*

*also Parents Against Drunk Drivers v. Graystone Pines Homeowners' Assoc.*, 789 P.2d 52, 54 (Utah Ct.App.1990). Because summary judgment is granted as a matter of law rather than fact, we review the trial court's legal conclusions for correctness. *Id.*

In its ruling, the court wrote that Ehlers's two additions to Carbon County's statement of undisputed facts were "unimportant aspects." Those two aspects were (1) Ehlers's understanding that the project, and hence the contract, could go forward at any time, and (2) Ehlers's conversation with Semken, and the subsequent meeting with the commissioners, where Semken told him he could move forward on a later version of the project. Ehlers argues that these two additional facts support his position that the Complex was a continuation of the original Center project.

The controversy then becomes whether it is a disputed material fact that the Complex was or was not a continuation of the Center. Ehlers offered no factual support for his position that the Complex was a continuation of the Center, but merely asserted in his deposition his *belief* that the two projects were one and the same. *Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 895 (Utah 1988) (a contract provision is not necessarily ambiguous "simply because one party seeks to endow [it] with a different meaning than that relied upon by the drafter.")

On the other hand, Carbon County submitted affidavits of Norman Prichard and Tim Simmons and also relied on the deposition of Ehlers to support their proposition that the Complex was not a continuation of the Center project.

Simmons, the trial court executive for the Seventh Judicial District Court of Carbon County, stated in his affidavit the following: that he was involved with the Complex from its inception, that it was never intended to house facilities for the county commission or for the county jail, that it was never intended to be an extension of the existing county courthouse, and that the Complex was always intended to be an

independent facility to house the three courts.

Norman Prichard, the Carbon County Clerk/Auditor, in his affidavit stated the following: that the Center project was to be a part of the existing courthouse and would include facilities for the district court and the commission chambers, and an expanded and remodeled jail facility, whereas the Complex, started four years later in 1985, was to contain courtrooms and supporting clerical facilities for the district, juvenile and circuit courts; that the Complex did not contain provisions for any other facility; that the county commission had made it clear to Ehlers from the outset that the Center project was contingent on the bond issue passing; and that the commission certified the rejection of the bond issue on June 15, 1981.

Ehlers, in his deposition, agreed that, at the time of contracting, the Center was designed as a remodel and/or addition to the existing courtroom, the jail, and the commission chambers.

■ To cite the undisputed facts in comparison form: the Center was designed to house commission chambers and the county jail, whereas the Complex was not. The Center was designed to be an extension of existing courthouse facilities, whereas the Complex was to be a separate building, independent of existing facilities. Finally, the Center was contingent on a bond election, whereas the Complex was not.

Therefore, even though Ehlers may have believed that the two projects were one and the same, that belief is not material to the decision to grant summary judgment. We agree with the trial court that there was no dispute of material fact. More specifically, we find no dispute as to the fact that the Tri–Court Complex was a separate project from the aborted Carbon County Criminal Justice Center and that Ehlers's contract with Carbon County pertained to the Center.

## ESTOPPEL

Ehlers's next argument, in effect, is that regardless of whether the Center project

died in 1981, his 1985 conversations with Semken and the other commissioners reasonably led him to believe that he would be the architect for the Tri–Court Complex. Because he devoted considerable money and effort to preparing for the Complex project, Ehlers claims the County should be estopped from asserting it had no contract with him for the Complex.

The elements of estoppel, which present questions of fact, are "(1) a representation, act, or omission, (2) justifiable reliance, and (3) a change of position to one's detriment based on that reliance." *Mont Trucking, Inc. v. Entrada Industries, Inc.*, 802 P.2d 779, 782 (Utah Ct.App.1990) (quoting *Rothey v. Walker Bank & Trust Co.*, 754 P.2d 1222, 1224 (Utah 1988)).

■ Generally, estoppel cannot be asserted against a government agency. *Eldredge v. Utah State Retirement Bd.*, 795 P.2d 671, 675 (Utah Ct.App.1990); *Utah State Univ. v. Sutro & Co.*, 646 P.2d 715, 718 (Utah 1982). The exception to this rule is where

the interests of justice mandate an exception to the general rule. In cases where such an issue arises, the critical inquiry is whether it appears that the facts may be found with such certainty, and the injustice to be suffered is of sufficient gravity, to invoke the exception. And in case there is doubt on such matters, it should be resolved in favor of permitting the party to have a trial of the issue, as opposed to summary rejection thereof.

*Id.* at 720 (footnotes omitted).

■ Whether grave injustice would result in this case must be determined from the facts in dispute, and whether there was a representation made to Ehlers by Carbon County that was relied upon by Ehlers, to his detriment, and whether this was of sufficient gravity to invoke the exception. We therefore remand to the trial court for action consistent with this opinion.

BENCH and GREENWOOD, JJ., concur.