**NEW WEST FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff, Appellee, and Cross–Appellant,**

v.

**GUARDIAN TITLE COMPANY OF UTAH, and Stephen S. Durish, as receiver and liquidator of USLife Title Insurance Company of Dallas a/k/a Title USA Insurance Corporation, and Guardian Title Company of Utah, Defendant, Appellant and Cross–Appellee.**

No. 890569–CA.

Court of Appeals of Utah.

Sept. 23, 1991.

---

L. Benson Mabey (argued), Murphy, Tolboe & Mabey, Salt Lake City, for Guardian Title.

David E. Leta, Hansen, Jones, Maycock & Leta, Salt Lake City, for Appellant, Durish.

Lester A. Perry (argued), Kesler & Rust, Salt Lake City, for Federal Sav.

Before BILLINGS, GARFF and ORME, JJ.

## OPINION

GARFF, Judge:

Appellant Guardian Title Company appeals a summary judgment granted in favor of appellees, American Savings et al.[1] American Savings, in turn, appeals the portion of the summary judgment denying attorney fees and punitive damages.

American Savings, in turn, appeals the portion of the summary judgment denying attorney fees and punitive damages.

## FACTS

Except where otherwise indicated, we set forth the undisputed facts upon which summary judgment was based. Where the facts conflict, we either note the dispute or we cite the facts in the light most favorable to Guardian. *Ehlers & Ehlers Architects v. Carbon County*, 805 P.2d 789, 791 (Utah App.1991).

M. Lynn Strong and Cherie G. Strong owned a single family residence located in Midvale, Utah. Prior to December 14, 1983, Strongs approached American Savings for a loan. On December 14, 1983, Guardian Title Company, as agent for USLife Title Insurance Company of Dallas, caused to be issued a commitment for title insurance to American Savings as proposed insured. The loan was to be for $81,400, with interest at 12.75% per annum, and was to be secured by a trust deed on the property.

Meanwhile, on December 30, 1983, Strongs obtained a $31,300 loan from another financial institution, Scenic Rail Credit Union. Scenic secured this loan with a trust deed on the property, recorded February 14, 1984. This trust deed document was captioned "Second Trust Deed."

Guardian acted as closing agent for the loan transaction between Strongs and

---

1. Because of a supervised reorganization of American by the federal government, the plaintiff was changed from American to New West just prior to appeal. For convenience, we refer to appellee as American. Further, USLife was placed under a state supervised receiver/liquidator in Texas shortly after its appeal was commenced. This court previously ordered that the receiver/liquidator, Stephen S. Durish, be substituted as a party for USLife.

American Savings. Closing for the $81,400 loan occurred on March 14, 1984. American did not order a new commitment for title insurance, nor an updated title search prior to closing, and Guardian was not aware of the existence of the Scenic trust deed until after the closing.

On March 23, 1984, after the American loan was closed, Guardian, as agent for USLife, caused to be issued a Mortgagee Policy of Title Insurance, naming American as insured, insuring against loss in the event its deed of trust was not in first priority position, up to the maximum amount of $81,400.

The closing, escrow and disbursal of loan proceeds were governed by written escrow instructions from American to Guardian. The instructions were received and acknowledged in writing by Guardian's escrow/closing officer, Fay Anderson. These instructions provided that Guardian pay off existing liens or encumbrances before disbursing the balance of the funds so that it could issue a title insurance policy insuring American's trust deed as a first lien of record. Guardian, not being aware of the prior encumbrance, took no steps to retire the Scenic lien.

USLife issued the title policy insuring American's trust deed as a first lien, as required under the prior commitment and the escrow instructions. At some point, and it is disputed precisely when, Guardian became aware that the Scenic trust deed was still outstanding and was superior to the one USLife was insuring. To cite the facts in the light most favorable to Guardian, it became aware of the prior trust deed only after American's trust deed was recorded and the loan proceeds had been disbursed.

Guardian contacted Strongs to urge them to pay off the Scenic trust deed and monitored their payments for a short period of time. Guardian did not file a request for notice of default and sale, pursuant to Utah Code Ann. § 57–1–26 (Supp.1989). Instead, Guardian assumed it would receive such notice on account of it being the trustee under American's trust deed.

On February 1, 1986, Strongs defaulted on their loan with American. At that time, the balance due American was $80,939.35 principal, together with accrued interest and reserve fund shortage of $1,712.16. The balance owed was well in excess of the original principal amount of American's loan and the maximum limit in the policy issued by USLife.

Sometime after Strongs' default on the American loan, American, through its counsel, commenced nonjudicial foreclosure proceedings. On August 8, 1986, Strongs filed a Chapter 7 bankruptcy petition, ultimately obtaining a full discharge of their obligations without distribution being made to any unsecured creditors or to American.

Strongs also defaulted on their loan with Scenic. Foreclosure was commenced on its trust deed with a recording of a notice of default on October 20, 1986. Strongs' bankruptcy delayed completion of the Scenic foreclosure. Nevertheless, on February 23, 1987, the property was sold at a trustee's sale for less than $28,000.

American and its counsel received copies of Scenic's notice of default, notice of sale, and a foreclosure report. The report listed Scenic's trust deed before that of American. Neither American nor its counsel verified the priority of American's trust deed on the property.

The amount due American under the Strong loan on February 1, 1986, the date Strongs defaulted on their loan with American, was $82,651.51, including interest, late fees and reserve shortage. The amount due American on the date that Scenic completed its foreclosure, February 23, 1987, was $95,380.15, including interest, late fees and reserve shortage.

American then demanded that Guardian and USLife pay $81,400, representing the face amount of the policy. Guardian claims that this amount was $51,000 more than the loss represented by the undisclosed lien. USLife tendered to American $29,957.30, representing the principal due on the Scenic note plus interest. Guardian claims this payment fulfilled USLife's duty as indemnitor.

The district court granted American's motion for summary judgment by holding USLife and Guardian jointly and severally liable for damages in the principal amount of $86,737.40. The court declined to award attorney fees. The court noted that the "measure of damages was fixed upon the breach of the contract by the insurer which occurred at the moment when the transaction was closed and the money lent without placing the lender ... in a first mortgage position.... [T]he damages occurred at the moment of the closing." The trial court noted that the basis for its decision was American's memorandum in support of its motion for summary judgment, a fifty-four page document containing fifteen different legal arguments. The court neglected to specify which argument or arguments it relied upon.

Guardian appeals, claiming that it acted solely as agent for USLife, and therefore the court erred in determining that it assumed any duties outside those of insurance agent.

American cross appeals claiming that (1) it is entitled to judgment as a matter of law because Guardian acted as indemnitor and breached its indemnity contract by failing to promptly tender the $29,947.30; (2) it is entitled to attorney fees as a matter of law because Guardian breached its duty to carry out the insurance contract with good faith and fair dealing and because Guardian's defense was without merit and not brought in good faith pursuant to Utah Code Ann. § 78–27–56 (1991); (3) it is entitled to punitive damages as a matter of law based on Guardian's breach of fiduciary duty as escrow agent; and (4) it is entitled to damages because Guardian negligently misrepresented the status of the American trust deed.

We conclude that the undisputed facts establish as a matter of law that Guardian served as an escrow agent and that Guardian breached the escrow agreement. We remand for further proceedings.

## SUMMARY JUDGMENT

■ When reviewing a summary judgment, we

> view the facts and inferences to be drawn therefrom in the light most favorable to the losing party and affirm only where it appears there is no genuine dispute as to any material issue of fact, or where, even according to the facts as contended by the losing party, the moving party is entitled to judgment as a matter of law.

*Ehlers & Ehlers Architects v. Carbon County*, 805 P.2d 789, 791 (Utah App.1991). *See also Culp Constr. Co. v. Buildmart Mall*, 795 P.2d 650, 651 (Utah 1990). "Moreover, we review the trial court's legal conclusions for correctness and give no particular deference to that court's view of the law." *Projects Unltd. v. Copper State Thrift*, 798 P.2d 738, 743 (Utah 1990). *See Perkins v. Great–West Life Assur. Co.*, 814 P.2d 1125, 1128–29 (Utah App.1991).

## LIABILITY OF AGENT

Guardian argues that the court erred as a matter of law to the extent it held Guardian liable for duties under the contract for title insurance.[2] Guardian asserts it assumed no duties as insurer, but acted only as agent for the insurer USLife. Specifically, Guardian's position is that it acted as agent for its disclosed principal, USLife, in closing the loan transaction and in issuing the title insurance policy. Guardian argues that it did not represent nor purport to act as anything other than a title insurance agent for and on behalf of USLife.

■ An insurance agent who acts in an authorized, nontortious manner is not personally liable to the insured for his or her acts or for any contracts which he or she makes on behalf of the disclosed principal. 4 Couch on Insurance, 2d § 26A:288. *See e.g., Greene v. Truck Ins. Exch.*, 114 Idaho 63, 753 P.2d 274, 280 (Idaho App.1988) (in-

**2.** Our dilemma in this case is that the court relied generally on American's memorandum in support of summary judgment and did not "issue a brief written statement of the ground for its decision," as required by Utah R.Civ.P. 52(a). This leaves us in a position of guessing which of the fifteen different legal theories in the memorandum were accepted by the court.

surance agent not personally liable when contracts and representations made within scope of express, implied, or apparent authority); *State v. Appleton & Cox of Cal., Inc.*, 703 P.2d 413, 414 (Alaska 1985) (insurance broker not liable, even though broker erroneously named as insurer on certificate); *Doble v. Lincoln County Title Co.*, 692 P.2d 1267, 1270 (Mont.1985) (no tort where only evidence against agent was that at all times it was acting as agent of title insurance company, which was not shown to have violated any applicable standard of care).[3]

■ In determining whether Guardian acted as insurer, rather than as agent for USLife, we look to the clear language of the policy. We interpret the policy as a matter of law, according no deference to the trial court. *Perkins v. Great–West Life Assur. Co.*, 814 P.2d 1125, 1129 (Utah App.1991); *Chacon v. American Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo. 1990); *Anderson v. Title Ins. Co.*, 103 Idaho 875, 878, 655 P.2d 82, 85 (1982); ("Title insurance policies are governed by the same general rules and principles of interpretation and construction as other insurance policies."). "[A]s a matter of public policy, ambiguities or inconsistent provisions in insurance contracts are construed against the insurer and in favor of coverage." *Moore v. Energy Mut. Ins. Co.*, 814 P.2d 1141, 1143 (Utah App.1991).

Here, the policy specifies that USLife is the insurer. Moreover, no separate consideration was given Guardian to act as an additional insurer. Where no separate fee or consideration is given, there can be no separate obligation arising apart from the title insurance contract. *Anderson*, 655 P.2d at 84–85. In short, American bargained for precisely what it received: a title policy or indemnity contract from US-Life to cover actual loss in the event its trust deed was not in a first lien position on the property.

We therefore hold that Guardian did not assume any duties as insurer, indemnitor, or abstractor and we reverse the summary judgment to the extent it was based on a theory that Guardian acted as insurer, indemnitor, or abstractor.[4]

## ESCROW AGREEMENT

■ Guardian argues that it assumed no duties outside those defined in the contract for title insurance. Since it had no duty thereunder, it had no duty to American. American, on the other hand, claims Guardian assumed the duties of an escrow agent and therefore summary judgment was justified as a matter of law.

American and Guardian agreed in the statement of undisputed facts that

> Guardian and USLife were chosen to examine the state of the title on the Property, to close the loan between the Strongs and American, to act as escrow and closing agent, to take possession of $81,-400.00 in loan proceeds from American, and to disburse the proceeds according to written escrow/closing instructions from American....

Moreover, Guardian undertook, by way of the written escrow instructions, which it received, accepted without comment, and implicitly agreed to effectuate, to "secure [the] Trust Deed as a first and paramount lien of record ..." These instructions were received and acknowledged in writing by Guardian's escrow/closing officer, Fay Anderson. Thus, it is undisputed that Guardian acted as escrow agent for American and Strongs, and as such assumed some standard of performance. Minimally,

---

**3.** Further, "the subsequent insolvency of the insurance company has been held not to impose liability on the agent of broker, where the company was solvent when the policy was procured." 3 Couch on Insurance 2d § 25:48 (rev. 1984). *See e.g., Sternoff Metals Corp. v. Vertecs Corp.*, 39 Wash.App. 333, 693 P.2d 175, 180 (1984) (agent not liable where insurer was in fact solvent at time of placement and remained so for two years prior to insolvency).

**4.** Because Guardian's role, vis a vis USLife and American, was that of agent for USLife, we need not determine whether the title insurance policy was one of indemnity rather than warranty, or whether USLife breached any contract of indemnity.

it agreed not to disburse the loan until certain conditions had been met.[5]

It is undisputed that when Guardian recorded American's trust deed, it failed to re-examine the status of the title, even though four months had elapsed since its previous title examination. Guardian then disbursed the loan proceeds when it should have known that American would not be in the position of first lien holder. Therefore, Guardian was negligent as a matter of law.

■ Thus, American is entitled to judgment against Guardian on the issue of liability. However, our review of the record demonstrates the existence of disputes of material fact on such issues as the proper measure of damages, contributory negligence, and mitigation. We remand for reconsideration of the *amount* of the judgment to which American is entitled.

## PUNITIVE DAMAGES

■ American argues that Guardian's actions as escrow agent amounted to fraud and that punitive damages should be awarded. American also argues that Guardian assumed other duties beyond that of escrow agent and that Guardian negligently misrepresented the status of the American trust deed. On the record before us, we cannot hold that American is entitled to judgment as a matter of law on these theories.

## ATTORNEY FEES

American cross appeals arguing that attorney fees were justified as a matter of law by Guardian's breach of its duty to perform the insurance contract with good faith and fair dealing as set forth in *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801–02 (Utah 1985). This argument fails because of our determination that Guardian had no duty as insurer. American also claims that attorney fees were justified as a matter of law pursuant to Utah Code Ann. § 78–27–56 (1991), which allows for a

trial court to award attorney fees where the opposing claim is without merit and not brought in good faith. Because the undisputed facts do not establish that Guardian's defenses were without merit and not brought in good faith, and because we reverse the summary judgment, we conclude the trial court correctly denied attorney fees on summary judgment.

We therefore reverse the summary judgment and remand for further proceedings consistent with this opinion.

BILLINGS and ORME, JJ., concur.

---

5. "It is well established that an escrow agent assumes the role of the agent of both parties to the transaction, and as such, a fiduciary is held to a high standard of care in dealing with its principals." *Freegard v. First W. Nat'l Bank,* 738 P.2d 614, 616 (Utah 1987); *Hertz v. Nordic Ltd., Inc.,* 761 P.2d 959, 962 (Utah App.1988).