2010 UT App 135

**COOPER ENTERPRISES, PC,**
**Plaintiff and Appellee,**

v.

**BRIGHTON TITLE COMPANY, LLC;**
**Deseret Sky Development, LLC; and**
**Does 1–10, Defendant and Appellant.**

No. 20090209–CA.

Court of Appeals of Utah.

May 27, 2010.

---

Douglas L. Stowell and Adam Crayk, Salt Lake City, for Appellant.

Scott R. Wangsgard and Eric K. Johnson, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and ORME.

## OPINION

ORME, Judge:

¶1 Defendant Brighton Title Company, LLC (Brighton) challenges the district court's grant of summary judgment in favor of plaintiff Cooper Enterprises, PC (Seller). At issue is an escrow agent's responsibility as to an earnest money deposit in a situation where the seller holds only a contractual right to acquire the subject property and not actual title. We affirm the summary judgment in favor of Seller.

## BACKGROUND

¶2 On May 25, 2007, defendant Deseret Sky Development, LLC (Buyer)[1] and Seller entered into a Real Estate Purchase Contract (the REPC). The REPC required Buyer to initially deposit $100,000 earnest

---

1. Buyer did not defend against summary judgment below and has not appealed the judgment against it.

money in escrow with Brighton, followed by an additional $100,000 on June 8, 2007, at which time the earnest money would become nonrefundable unless the REPC was canceled according to its terms.

¶ 3 In addition to acting as the escrow agent for the transaction, Brighton also acted as Buyer's title insurance agent. On May 31, 2007, Brighton discovered that Seller's rights to the property were not held in fee title as Seller represented in the REPC. Instead, Seller held only a contractual right to purchase the property under another real estate purchase contract. Because of these problems, Brighton's title insurance underwriter informed Brighton that it would not issue an insurance policy on the transaction. On June 1, 2007, Brighton informed Buyer that Seller did not hold fee title to the property.

¶ 4 Despite being aware that Seller did not hold fee title and that Brighton's underwriter would not insure the transaction, Brighton accepted the initial $100,000 in earnest money from Buyer on June 5, 2007. Buyer did not cancel or object in writing to the REPC before the June 8, 2007 deadline but also did not deposit the additional $100,000 earnest money due under the REPC by that date. Several days later, Brighton released the initial $100,000 earnest money back to Buyer, disregarding Seller's expressed claim to the money.

¶ 5 The REPC stated: "If Buyer defaults, Seller may elect . . . to retain the Earnest Money Deposit as liquidated damages[.]" After Brighton refused Seller's request for the $100,000 earnest money as liquidated damages, Seller filed a complaint against Brighton, alleging that Brighton breached its

fiduciary duty by returning the earnest money to Buyer and seeking a judgment against Brighton for $100,000.

¶ 6 Seller subsequently filed a summary judgment motion. The district court granted Seller summary judgment, determining that there were no material facts in dispute and that Seller was entitled to judgment as a matter of law.[2] The district court also determined that under Utah law, Seller had not breached the REPC because Brighton "had actual notice of the nature of [Seller]'s title before expiration of the initial deposit was acknowledged, and before the Due Diligence Deadline." The court concluded that Brighton owed Seller "a fiduciary duty as a trustee not to disburse the earnest money deposited with it, except to fulfill the . . . terms of the REPC, for which the funds were accepted," and that Brighton had incorrectly released the earnest money to Buyer even though Brighton had other options as the escrow agent.[3] Brighton appealed.

¶ 7 After oral argument and while the appeal was under advisement, Seller filed a motion to dismiss the appeal, arguing this court lacks jurisdiction because the notice of appeal was filed before the final judgment was entered. For the reasons explained below, we denied the motion.

## ISSUE AND STANDARD OF REVIEW

¶ 8 Brighton claims the district court erred in granting Seller summary judgment and argues both that genuine issues of material fact existed and that summary judgment was precluded as a matter of law. See Utah R. Civ. P. 56(c). "An appellate court reviews a

---

**2.** On appeal, Brighton has failed to demonstrate that the district court abused its discretion when it determined that Brighton did not comply with rule 7(c)(3)(B) of the Utah Rules of Civil Procedure. See Jennings Inv., LC v. Dixie Riding Club, Inc., 2009 UT App 119, ¶ 6, 208 P.3d 1077, cert. denied, 215 P.3d 161 (Utah 2009). By not providing a recitation of the controverted facts, Brighton clearly failed to comply with rule 7(c)(3)(B). That said, the district court expressly commented that "Brighton['s] failure to comply with the requirements of Rule 7 . . . was not the basis for the [summary judgment] ruling."

**3.** Given the inconsistent demands on the escrow money, the prudent course for Brighton would

have been to file an interpleader action and deposit the money with the court so the court could determine which party was entitled to the money. See generally Utah R. Civ. P. 22; First Sec. Bank of Utah, N.A. v. Maxwell, 659 P.2d 1078, 1080 (Utah 1983) (stating that "[r]ule 22 of the Utah Rules of Civil Procedure clearly authorized the [escrow agent] to file . . . an [interpleader] action" to determine the parties' rights). That lapse in judgment does not divest Brighton of the right to have its claim adjudicated, however, because we can apply the law and determine who was entitled to the money as readily as the district court could have done had an interpleader action been filed.

trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citations and internal quotation marks omitted).

## ANALYSIS

■ ¶ 9 Before considering the merits of the appeal, we take this opportunity to explain our reasoning in denying the postargument motion to dismiss for lack of jurisdiction. While it is true that the notice of appeal in this case was filed after minute entries announcing the district court's decision but before the final judgment was entered, such a scenario is entirely proper under the Utah Rules of Appellate Procedure. Rule 4(c) states that "[a] notice of appeal filed after the announcement of a decision, judgment, or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof." Utah R.App. P. 4(c). Thus, by operation of the rule, it is just as though the notice of appeal was filed immediately after the judgment was entered.

■ ¶ 10 Seller suggests that "the announcement of a decision, judgment, or order" under rule 4(c) must include all the details required under the final judgment rule, such as the amount of attorney fees. *See generally Bradbury v. Valencia*, 2000 UT 50, ¶¶ 9, 11, 5 P.3d 649 (determining that the court's order was not a final judgment when a counterclaim and intervening claim were still pending and stating that "[f]or an order or judgment to be final, it must dispose of the case as to all the parties, and finally dispose of the subject-matter of the litigation on the merits of the case") (emphasis, citation, and internal quotation marks omitted); *ProMax Dev. Corp. v. Raile*, 2000 UT 4, ¶ 15, 998 P.2d 254 (determining that a judgment was not final because it did not resolve the amount of attorney fees). However, rule 4(c) does not require that the court's announcement of its decision include every detail that

will find its way into the final judgment. *See* Utah R.App. P. 4(c). On the contrary, a court's mere announcement of its final decision will invariably be less detailed than the actual final order, and as long as the announcement does not reserve important matters for future determination and is followed by a final order that complies with our final judgment jurisprudence, rule 4(c) requires this court to regard the appeal as if it were filed immediately after entry of the final judgment, *see id.* On that basis, we clearly have jurisdiction over the appeal.

■ ¶ 11 Turning to the merits, we begin by noting that this appeal focuses solely on the earnest money deposited into escrow and the resulting duties. Escrow occurs when "any agreement, express or implied, ... provides for one or more parties to deliver or entrust any money ... to another person to be held, paid, or delivered in accordance with terms and conditions prescribed in the agreement." Utah Code Ann. § 7–22–101(1)(a) (2006). An escrow agent is "any person that provides or offers to provide escrow services to the public." *Id.* § 7–22–101(1)(b). An escrow agent has a fiduciary duty to both parties to a transaction. *Freegard v. First W. Nat'l Bank*, 738 P.2d 614, 616 (Utah 1987) ("It is well established that an escrow agent assumes the role of the agent of both parties to the transaction, and as such, a fiduciary is held to a high standard of care in dealing with its principals.") (citation footnote omitted). *See also* Utah Code Ann. § 7–22–108(2) ("All other assets or property received by an escrow agent in accordance with an escrow agreement shall be maintained in a manner which will reasonably preserve and protect the property from loss, theft, or damage, and which will otherwise comply with all duties and responsibilities of a fiduciary or bailee generally."); *New W. Fed. Sav. & Loan Ass'n v. Guardian Title Co.*, 818 P.2d 585, 587, 590 (Utah Ct. App.1991) (determining that the title company was "negligent as a matter of law" when it disbursed escrow funds contrary to the escrow agreement's instructions).[4]

---

4. Because the standard of care in this case is "fixed by law," this case is distinguishable from

cases where the standard of care is a factual question that must be determined by the trier of

¶ 12 In this case, Buyer deposited earnest money into escrow with Brighton as the REPC required. By accepting the earnest money, Brighton assumed a fiduciary duty to both Buyer and Seller to hold the earnest money and release it only when the conditions in the REPC had been met.[5] *See Freegard,* 738 P.2d at 616.

¶ 13 We recognize that Brighton was in a difficult position because its underwriter would not insure the transaction given that Seller did not have title to the property and Utah law prohibits a title company from acting as an escrow agent when it is not issuing a title insurance policy on the transaction, *see* Utah Code Ann. § 31A–23a–406(1)(c) (Supp. 2009). In addition, Utah's insurance commissioner had issued a bulletin cautioning against "land flip" transactions [6] and requiring that each transaction "close independently from the" other with independent funds, D. Kent Michie, Utah Ins. Dep't, *Bulletin 2007–1* 1 (2007), http://www.insurance.utah. gov/docs/bulletins/2007–1.pdf, which this transaction was not structured to do.

¶ 14 However, Brighton was aware of all of these problems with the transaction before it accepted the earnest money from Buyer, and was thus responsible for any adverse consequences that resulted from its decision to accept the money. Plus, Brighton could have protected itself by requiring Buyer to give assurances that Buyer would opt out of the REPC in the time allowed if Seller did not acquire title by that time. Because Brighton accepted the earnest money knowing of the

transaction's problems and did not interplead the funds when competing demands were asserted, Brighton had no choice but to conclude the escrow in a manner consistent with the REPC and its fiduciary duties to both parties. *See Freegard,* 738 P.2d at 616; *New W. Fed. Sav. & Loan Ass'n,* 818 P.2d at 589–90 (determining that an escrow agent was negligent when loan proceeds were incorrectly disbursed); *Hertz v. Nordic Ltd.,* 761 P.2d 959, 962 (Utah Ct.App.1988) ("Because of the agreement, [an escrow agent] do[es] not respond to the will of either of the parties until the specified event or period of time. Before this, he has power to deal with the subject matter in accordance with the agreement of those for whom he holds it, and this power cannot be terminated without the consent of both.") (citation and internal quotation marks omitted). Therefore, we agree with the district court's determination that Brighton breached its fiduciary duty to Seller when Brighton returned the money to Buyer instead of holding and disbursing the money as the REPC required.

¶ 15 Brighton is not somehow excused from its fiduciary duties just because adverse consequences might result from deviating from the instruction in the insurance commissioner's bulletin, particularly given that Brighton knew of the problems and could have avoided any trouble and protected itself through tailored escrow instructions on the front end or an interpleader action on the back end.[7] Brighton's specific obli-

fact. *See Wycalis v. Guardian Title,* 780 P.2d 821, 825 (Utah Ct.App.1989), *cert. denied,* 789 P.2d 33 (Utah 1990).

5. Brighton argues that it did not have any duties to Seller because this transaction was a split closing and Seller had hired another title company to represent Seller. While Brighton did not share other duties that might be owed by Seller's title company, it had duties as the escrow agent for both sides when it accepted and held the earnest money in escrow as contemplated by the REPC, *see Freegard v. First W. Nat'l Bank,* 738 P.2d 614, 616 (Utah 1987). We reject Brighton's contention that a title company in a split closing transaction does not owe a fiduciary duty to both parties to the one transaction when it is responsible for holding and properly disbursing escrowed funds deposited in accordance with the terms of that transaction.

Similarly, Brighton's argument that it was not bound by the REPC between Buyer and Seller fails. Although Brighton did not sign the REPC, the REPC listed Brighton as the escrow agent, and when it accepted the earnest money and received a copy of the REPC, a fiduciary duty arose to disburse the earnest money only in accordance with the terms of the REPC. *See id.*

6. A land flip transaction occurs when property is sold immediately after being bought and, according to the insurance commissioner, these transactions "often involve[] fraud." D. Kent Michie, Utah Ins. Dep't, *Bulletin 2007–1* 1 (2007), http://www.insurance.utah.gov/docs/bulletins/2007–1.pdf.

7. We doubt that Brighton would have run afoul of the bulletin by properly holding and disbursing the escrow funds because Brighton would

gations under the contract and escrow transcend any general obligation it had to adhere to a bulletin from the insurance commissioner. Similarly, Brighton is not excused from its fiduciary duties because of the statutory quandary it placed itself in by accepting the earnest money after learning its underwriter would not issue a title insurance policy, contrary to Utah Code section 31A–23a–406's mandate that title insurance companies not act as escrow agents unless an insurance policy will issue as part of the transaction. *See* Utah Code Ann. § 31A–23a–406(1)(c). *See also id.* § 31A–23a–406(3)(b)–(c) ("Funds held in escrow … may only be used to fulfill the terms of the individual escrow under which the funds were accepted and … may not be used until all conditions of the escrow have been met.").

¶ 16 Nor can Brighton's duties be excused based on Seller's statement in the REPC that Seller held fee title to the property because both Brighton and Buyer knew—before the earnest money was deposited and before the deadline to opt out of the contract had passed—that Seller did not hold fee title.[8] *See Frailey v. McGarry*, 116 Utah 504, 211 P.2d 840, 844 (1949) ("It is well settled … that a person claiming the right to rescind a contract because of misrepresentations or fraud, must, after discovery of the

fraud, … evidence his intent to rescind by some unequivocal act either by notice or some act amounting to notice of intent to rescind. Moreover, a defrauded party, after learning the truth will not be permitted to go on deriving benefits from the transaction and later elect to rescind.") (citations omitted). Very simply, Brighton owed Seller a fiduciary duty that Brighton breached, and such fiduciary duty will not be excused when Brighton knew of the problems with the transaction before it accepted the earnest money and placed it into escrow.[9]

## CONCLUSION

¶ 17 We affirm the district court's grant of summary judgment because no material facts were in dispute and Seller was entitled to judgment as a matter of law.

¶ 18 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and CAROLYN B. McHUGH, Associate Presiding Judge.

---

not thereby be closing a flip transaction but, rather, only paying escrow funds in accordance with the REPC under which it held the funds.

8. This is especially true in this circumstance where Seller is not attempting to claim actual damages related to a breach of contract but is simply enforcing the liquidated damages provision that allowed Seller to retain the earnest money deposit held in escrow.

9. Brighton's additional arguments are without merit, and we decline to discuss them further.

*See generally State v. Carter*, 776 P.2d 886, 888 (Utah 1989) (stating that an appellate court "need not analyze and address in writing each and every argument, issue, or claim raised and properly before [the court] on appeal[, but r]ather, it is a maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court").