**2018 UT App 200**

## THE UTAH COURT OF APPEALS

ROBERT REED PYPER,
Appellant,
*v.*
JOHN REIL
AND MERIDIAN TITLE COMPANY,
Appellees.

Opinion
No. 20170503-CA
Filed October 18, 2018

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 130906816

Thor B. Roundy and Cory B. Mattson, Attorneys
for Appellant

D. Joseph Cartwright, Attorney for Appellee
John Reil

Rachael L. Ortiz and Garreth Long, Attorneys for
Appellee Meridian Title Company

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and DAVID N.
MORTENSEN concurred.

POHLMAN, Judge:

¶1     This dispute arises out of a failed financial transaction in which Plaintiff Robert Reed Pyper executed a promissory note and a trust deed securing that note. Pyper brought various claims against Defendants Uriah Kennedy and John Reil, who were both present when Pyper signed the documents, alleging that they defrauded him. Pyper also brought a negligence claim against Defendant Meridian Title Company, who acted as the escrow agent for the transaction. The district court granted

summary judgment to Meridian and dismissed Pyper's claim against it. After a bench trial on the remaining claims, the district court entered judgment against Kennedy but dismissed Pyper's claims against Reil.

¶2    Pyper raises two issues on appeal. First, he contends that the district court erred in concluding that he had not proven his claim for civil conspiracy against Reil. Second, he contends that the district court erred in granting summary judgment to Meridian on the ground that Meridian, as the escrow agent, had no duty to stop Pyper from entering the deal even if it knew or suspected fraud was occurring. We affirm.

BACKGROUND

¶3    In October 2012, Plaintiff Pyper pledged real property as collateral for a loan to another entity in the amount of $445,401.50. Defendant Kennedy promised Pyper that in exchange for his pledge of collateral, Pyper would be paid $5,000 monthly until the loan was fully repaid to the lender. Kennedy also promised Pyper that he would receive $250,000 after the loan's repayment. The purported purpose of the loan was to fund the acquisition of a company called Seaich Corporation, and Pyper understood that the loan proceeds would be invested in that company.

¶4    Defendant Reil cosigned the loan as a borrower with Pyper. Reil also believed that he was helping to obtain a loan to fund the acquisition of Seaich. Pyper and Reil never met or communicated before or after meeting on October 19, 2012, to close the loan transaction. Reil's representations to Pyper at the October 19 closing were limited to general assurances that "[e]verything will be ok" and that "[t]his will work out."

¶5    Defendant Meridian Title Company was the escrow agent for the transaction. A representative of Meridian was present at the October 19 closing, along with Pyper, Kennedy, and Reil. At the closing, Pyper executed a note in the amount of $445,401.50

and a trust deed conveying his property securing the note. Following the lender's instructions, Meridian wired $400,000 to the specified account. The recipient of the funds was an unrelated company called Agro Chem Tech.

¶6 The principal amount of the loan was never repaid and Pyper received no repayment bonus. Similarly, Pyper never received the promised monthly payments.

¶7 Pyper filed a lawsuit arising out of the failed transaction, contending that he was the victim of breach of contract, undue influence, civil conspiracy, and securities fraud by Kennedy and Reil. He also brought a negligence action against Meridian. Pyper did not challenge the loan itself but rather alleged that the funds were invested inappropriately in another company, and that Kennedy and Reil promised to repay him for the loan. He also alleged that Meridian acted negligently in closing the loan transaction and disbursing the funds to another company when, based on what Pyper alleges the Meridian representative observed, Meridian should have recognized that a fraud was occurring. As a basis for his claim against Meridian, Pyper asserted that Meridian owed him two specific duties: (1) the duty "to safeguard and preserve the loan proceeds and assure that those funds were transferred according to a lawful contract and for a lawful purpose," and (2) the duty "to protect [Pyper] from entering into a verbal agreement for the delivery of the loan proceeds to a third party" when it "knew or should have known" that Pyper "was the victim of fraud or undue influence."

¶8 Meridian moved for summary judgment, arguing that it did not owe Pyper a duty to protect him from fraud. Meridian contended that the duty it owed to Pyper as the escrow agent was limited to following the escrow instructions, which it did. And it urged the court to reject the suggestion in *Schoepe v. Zions First National Bank*, 750 F. Supp. 1084 (D. Utah 1990), that an escrow agent owes the "additional duty" of informing a principal to a transaction that he "was being defrauded by his partners."

¶9 In his opposition to summary judgment, Pyper argued that the standards developed by the title insurance industry established the duty of care Meridian owed him, and that the parties' experts (as well as the court in *Schoepe*) accurately described the scope of the duty, which included a duty "to disclose fraud that the escrow agent should have detected during the course of the transaction." Pyper then asserted that Meridian "breached the duty of care that it owed" to him and that the various facts related to the closing established that a "reasonable escrow agent" would have concluded that Pyper "did not understand the transaction and that a fraudulent activity was occurring."

¶10 After hearing arguments, the district court granted Meridian's motion. It accepted Pyper's argument that, as part of the escrow agent's fiduciary role, the agent had a duty to disclose facts "that would reasonably indicate a fraud was occurring." Nevertheless, the court observed that "recognizing a duty to disclose facts indicating fraud does not equate to a duty to halt a transaction where fraud is known or suspected," and it determined that, by arguing breach based solely on Meridian's knowledge of facts suggesting fraud and Pyper's general lack of understanding, Pyper sought to impose on an escrow agent a duty beyond disclosure—specifically, a duty "to interpose its informed judgment for a principal's, or to perform the principal's due diligence." The court rejected the existence of such a duty, concluding that an escrow agent "is not required to prevent a suspicious transaction when the principal is equally aware of all the facts," or to "exercise independent judgment and decline to follow [closing and disbursement] instructions" that are signed by the principal. The court concluded that Meridian had "no duty to police how Pyper spent the loan funds" and that Pyper could not "hold Meridian liable for following his instructions." Accordingly, the court concluded that Pyper's negligence claim against Meridian failed as a matter of law.

¶11 Pyper's remaining claims were eventually tried to the bench. Kennedy was not present at trial and no one appeared on

his behalf. Following the trial, the court entered its findings of fact and conclusions of law. Among other things, the court found that Kennedy, in some capacity, promised Pyper the repayment of the loan principal to the lender, along with additional monthly payments to Pyper of $5,000 until repayment, and $250,000 to Pyper out of profits following repayment. The court further found that Reil "believed that he was helping to obtain loans in order to fund the acquisition of Seaich"; that "[t]here are no facts establishing a conspiracy or any actionable conspiracy"; and that Pyper "has not proven by clear and convincing evidence that John Reil was part of a conspiracy as alleged. There is not sufficient evidence of an unlawful purpose or any agreement on such purpose by John Reil."

¶12 Based on those and other findings, the court concluded that Pyper "ha[d] not proven any claim for conspiracy against John Reil." The court further found that Pyper had not proven any other of his claims and dismissed them with prejudice. Additionally, the court entered judgment against Kennedy. Pyper appeals, challenging the district court's decisions with regard to Meridian and Reil.

ISSUES AND STANDARDS OF REVIEW

¶13 Pyper contends that the district court erred in concluding that he had failed to prove his conspiracy claim against Reil. Because Pyper does not challenge the court's findings of fact but instead contends only that the court failed to analyze the facts under the proper legal standard, we review the district court's ultimate conclusion for correctness. *See Purkey v. Roberts*, 2012 UT App 241, ¶ 11, 285 P.3d 1242 (stating that "[w]hether the trial court applied the proper legal standard for [a tort claim] is an issue of law, which we review for correctness").

¶14 Pyper also challenges the district court's grant of summary judgment to Meridian, claiming that the court erred in determining that an escrow agent does not owe a duty to stop an escrow transaction where the agent observes facts that would

lead a reasonable escrow agent to conclude that the agent was facilitating a fraud against one of the parties to the transaction. Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a). "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness . . . ." *Howick v. Salt Lake City Corp.*, 2018 UT 20, ¶ 5, 424 P.3d 841 (quotation simplified).

ANALYSIS

I. Pyper's Conspiracy Claim Against Reil

¶15    Pyper contends that the district court erred in concluding that he had not proven his claim against Reil for civil conspiracy. In particular, Pyper attacks the district court's conclusion that "Reil's actions in furtherance of the [pertinent] transaction . . . did not amount to a conspiracy between Reil and Kennedy on the basis that Reil's actions with respect to . . . Pyper did not involve an independent fraudulent misrepresentation of fact by Reil to Pyper that would be actionable under . . . the federal securities laws." We conclude that Pyper has not shown error in the district court's decision.

¶16    The tort of civil conspiracy requires proof of five elements by clear and convincing evidence: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Pohl, Inc. of Am. v. Webelhuth*, 2008 UT 89, ¶ 29, 201 P.3d 944 (quotation simplified); *see also Crane Co. v. Dahle*, 576 P.2d 870, 872 (Utah 1978) (providing the standard of proof for civil conspiracy). It is not necessary that each member of the conspiracy commit an unlawful act in furtherance of the conspiracy to be liable. *See Lawrence v. Intermountain, Inc.*, 2010 UT App 313, ¶ 12 n.4, 243 P.3d 508 ("Although . . . conspiracy to defraud requires proof of the underlying fraud, it is not

necessary that the underlying fraud have been actually committed by each member of the conspiracy." (quotation simplified)). Rather, a conspirator may be liable for a co-conspirator's unlawful acts in furtherance of the conspiracy. *See id.; see also Israel Pagan Estate v. Cannon*, 746 P.2d 785, 792 (Utah Ct. App. 1987) (recognizing a defendant's potential liability for civil conspiracy based not on the defendant's own actions but on the actions of a co-conspirator).

¶17    Pyper contends that the district court applied an incorrect legal standard to reach its conclusion that Pyper had failed to prove his claim against Reil for civil conspiracy. Specifically, Pyper argues that the district court erroneously assumed that for Reil to be liable for conspiracy, "he himself must personally have engaged in a tortious act against [Pyper]," and that on that basis the district court rejected Pyper's conspiracy claim. We reject Pyper's arguments for two reasons.

¶18    First, we disagree with the underlying premise that the district court misunderstood the law. Pyper claims that the district court "asserted that if John Reil did not himself make a fraudulent statement to [Pyper] then John Reil would not be liable with respect to the conspiracy." We see no record support for this claim. During the bench trial, the court inquired about Pyper's assertions that Reil made false statements to Pyper, but the court never expressed the view that Pyper's conspiracy claim failed if he could not demonstrate that Reil personally made fraudulent statements.[1]

---

1. As support for his claim that the court held this view, Pyper refers to two questions asked by the court during closing arguments. First, the court asked Pyper's counsel: "So where is the false statement made by Mr. Reil to Mr. Pyper." The transcript shows this question was asked regarding Pyper's claim against Reil for alleged securities fraud. Thus, the question was not directed toward the conspiracy claim. Second, the court asked counsel to "[p]oint [it] to an unlawful act that Mr. Reil

(continued…)

Similarly, in its written order, the court did not conclude that Pyper's claim failed solely on the ground that Reil himself did not make a fraudulent misrepresentation to Pyper.

¶19 Second, even if the district court had erroneously believed that a conspiracy could not be proven absent an unlawful act by Reil, Pyper has not challenged the court's separate determination that the conspiracy claim failed because there was no meeting of the minds on an unlawful purpose. As noted above, to succeed on a claim for conspiracy, a plaintiff must prove the existence of all five elements of the claim. *See supra* ¶ 16. Pyper's challenge focuses on only one of those elements, namely, the unlawful, overt act. Because Pyper has not demonstrated any error in the district court's determination that he failed to prove another element—a meeting of the minds on the unlawful purpose—his challenge necessarily fails. *See generally Federated Capital Corp. v. Shaw*, 2018 UT App 120, ¶ 20 (observing that "an appellant cannot demonstrate that a district court erred if [he or she] fails to attack the district court's reasons" for its decision (quotation simplified)); *Salt Lake County v. Butler, Crockett & Walsh Dev. Corp.*, 2013 UT App 30, ¶ 28, 297 P.3d 38 ("This court will not reverse a ruling of the trial court that rests on independent alternative grounds where the appellant challenges only one of those grounds.").

---

(…continued)
committed." While the question related to the conspiracy claim, it does not, standing alone, suggest that the court was mistaken about the law. Pyper argued that Reil had committed unlawful acts (i.e., securities fraud) in furtherance of the conspiracy, and thus it is unsurprising that the court inquired on this point. Further, in explaining its reasons for rejecting the conspiracy claim, the district court made no mention of the absence of an unlawful act by Reil and instead referred to the lack of agreement on Reil's part of an unlawful objective.

## II. Meridian's Duty of Care

¶20    Pyper argues that the district court erred in granting summary judgment to Meridian on his negligence claim. In particular, he faults the court for failing to recognize a duty, based on title insurance industry standards, for Meridian to "stop" the apparently fraudulent transaction occurring in its presence—even apparently in contravention to closing and disbursement instructions provided and signed by the parties to the transaction. As explained below, Pyper's contention asks us to extend the law regarding an escrow agent's fiduciary duty. We conclude that Pyper has not provided sufficient argument to persuade us that it is appropriate to expand the scope of an escrow agent's well-settled fiduciary duty, and we therefore affirm the district court's decision.

¶21    "The threshold question in a negligence claim is whether the defendant owed a duty to the plaintiff." *Mower v. Baird*, 2018 UT 29, ¶ 16, 422 P.3d 837. A duty is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another," *see B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 5, 275 P.3d 228 (quotation simplified), and this obligation "changes according to the relationships of the parties and the legally recognized duties that inhere in their relationships," *Mower*, 2018 UT 29, ¶ 41. Courts determine the existence of a duty as a matter of law, *Jeffs*, 2012 UT 11, ¶ 23, which depends on "the legal relationship between the parties, the foreseeability of injury, the likelihood of injury, public policy as to which party can best bear the loss occasioned by the injury, and other general policy considerations," *Nebeker v. Summit County*, 2014 UT App 244, ¶ 32, 338 P.3d 203 (quotation simplified); *see also Jeffs*, 2012 UT 11, ¶ 5 (same).

¶22    Both the existence and the scope of an escrow agent's duty are well-settled in Utah: an escrow agent owes a fiduciary duty to both parties of a transaction. *See, e.g., Orlando Millenia, LC v. United Title Services of Utah, Inc.*, 2015 UT 55, ¶¶ 35, 40 n.5, 355 P.3d 965. A fiduciary duty requires the escrow agent "to act

for the benefit of another person on all matters within the scope of their relationship," owing to another "the duties of good faith, loyalty, due care, and disclosure." *Fiduciary*, Black's Law Dictionary (10th ed. 2014); *see also Cooper Enters., PC v. Brighton Title Co.*, 2010 UT App 135, ¶ 11, 233 P.3d 548 (noting that an escrow agent "assumes the role of the agent of both parties to the transaction" (quotation simplified)).

¶23     In this regard, our courts have explained that "the core of the escrow agent's fiduciary duty is to follow the escrow instructions," *Posner v. Equity Title Ins. Agency, Inc.*, 2009 UT App 347, ¶ 19, 222 P.3d 775 (quotation simplified), *abrogated on other grounds by Coroles v. State*, 2015 UT 48, 349 P.3d 739, and that, in general, an escrow agent is required to "perform essential functions on behalf of the parties," *see Orlando*, 2015 UT 55, ¶ 35, such as maintain assets and property received, *see Cooper*, 2010 UT App 135, ¶ 11; preserve and protect the property "from loss, theft, or damage," *see id.* (quotation simplified); and disburse funds, *see Freegard v. First W. Nat'l Bank*, 738 P.2d 614, 616 (Utah 1987). *See generally Mower*, 2018 UT 29, ¶ 43 ("The specific scope of the duty will depend upon the conduct that gives rise to the duty and the relationship of the plaintiff and the defendant."). Relatedly, we have also explained that the standard of care applicable to an escrow agent's performance of its fiduciary duty is "fixed by law." *See Cooper*, 2010 UT App 135, ¶ 11 & n.4 (quotation simplified). As a fiduciary, an escrow agent is "held to a high standard of care in dealing with its principals." *Freegard*, 738 P.2d at 616; *see also Fiduciary*, Black's Law Dictionary (10th ed. 2014) (defining a fiduciary as "[s]omeone who must exercise a high standard of care in managing another's money or property").

¶24     Importantly, Utah has not recognized as included in an escrow agent's fiduciary duty the affirmative obligation to detect and halt a potentially fraudulent transaction—the duty Pyper asks that we recognize on appeal. *See generally Schoepe v. Zions First Nat'l Bank*, 750 F. Supp. 1084, 1086–89 (D. Utah 1990) (recognizing that Utah courts have applied only a limited agency

relationship between an escrow agent and the parties to a transaction, one largely limited by the instructions given to the agent).[2] Because such an obligation has not previously been recognized, Pyper must therefore demonstrate that it is appropriate to expand as a matter of law an escrow agent's fiduciary duty to encompass it.

¶25    Pyper contends that, because the parties' experts testified that the industry standards impose an obligation to, among other things, detect and prevent potential fraud independently from the parties to the transaction, the district court erred by not adopting that as the standard of care. But, as an initial matter, Pyper has not carried his burden of establishing as correct the assumption that appears to underlie this contention—that industry standards (and treatment of such standards by experts) ought to establish as a matter of law whether a particular duty exists or an expansion of a duty is proper. He cites no authority, for example, to support the proposition that the expansion of a duty should be established as a matter of law whenever members of an industry treat certain affirmative acts taken by its members as fulfilling an industry standard of care. *See generally Callister v. Snowbird Corp.*, 2014 UT App 243, ¶ 12, 337 P.3d 1044 (observing that the standard of care owed is a question of fact for the factfinder when it is *not* "fixed by law" and that, in such a circumstance, "testimony from relevant experts is generally required in order to ensure that factfinders have adequate

---

2. We recognize that, in rendering its decision, the district court adopted the escrow agent's duty as described in *Schoepe v. Zions First National Bank*, 750 F. Supp. 1084 (D. Utah 1990), and that the court specifically determined that it was appropriate to include as part of an escrow agent's fiduciary duty the obligation to disclose to the parties facts indicative of fraud. However, Pyper argues for imposition of a duty beyond that of mere disclosure, and thus we need not decide at this time whether an escrow agent's duty includes the obligation to disclose to the parties facts indicative of fraud.

knowledge upon which to base their decisions" (quotations simplified)); *Cope v. Utah Valley State College*, 2012 UT App 319, ¶¶ 10, 23, 290 P.3d 314 (observing that the "existence of a duty," which is a question of law, and "the appropriate standard of care are two distinct questions"), *aff'd on other grounds*, 2014 UT 53, 342 P.3d 243. We will not assume the burden of argument and research on his behalf. *See Nebeker*, 2014 UT App 244, ¶ 34.

¶26 More importantly, Pyper has not adequately analyzed whether it is now appropriate, given certain industry standards, to expand the scope of an escrow agent's fiduciary duty to include an obligation to affirmatively prevent fraud, even as against instructions provided and signed by the parties. *See Posner*, 2009 UT App 347, ¶ 19 (explaining that "the core of the escrow agent's fiduciary duty is to follow the escrow instructions" (quotation simplified)). Our supreme court has explained that the "structure and dynamics of the relationship between the parties gives rise to the duty," *Yazd v. Woodside Homes Corp.*, 2006 UT 47, ¶ 15, 143 P.3d 283, and that "[d]uty must be determined as a matter of law and on a categorical basis for a given class of tort claims, . . . [and] for a class of defendants," *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 23, 275 P.3d 228, "without focusing on the particular circumstances of a given case," *Mower v. Baird*, 2018 UT 29, ¶ 16, 422 P.3d 837 (quotation simplified). Pyper must therefore persuade us that the structure and dynamics of the relationship between escrow agents as a class and parties to a transaction are now such that fraud prevention should be imposed as a categorical and affirmative duty. *See generally Jeffs*, 2012 UT 11, ¶¶ 5–39 (identifying and analyzing the relevant factors applicable to determining whether a duty exists).

¶27 Yet Pyper has not demonstrated that an escrow agent's relationship with parties to a transaction has shifted in a legally significant way sufficient to justify the extension of an agent's fiduciary duty in this manner. *See Yazd*, 2006 UT 47, ¶¶ 14, 17; *see also Jeffs*, 2012 UT 11, ¶ 23. Nor has he shown that the other considerations relevant to the establishment of the

new legal obligation for which he requests recognition support an expansion of an escrow agent's already settled duty, *see Jeffs*, 2012 UT 11, ¶ 5, or that the scope of an escrow agent's duty has been the subject of evolution in law sufficient to support formal recognition in Utah law, *see Mower*, 2018 UT 29, ¶ 76 (concluding that, "[b]ased on the evolution of the law around the country" regarding the duty expansion being advocated by the appellant "as well as the policy considerations at play," it was appropriate to expand in a limited way the duty to refrain from recklessly inflicting emotional distress). He also does not explain how the duty for which he advocates might reasonably coexist with an escrow agent's "core" duty to follow the instructions provided to it or how the tensions inherent in affirmatively stepping outside of those instructions in situations implicating potential fraud might be resolved. *See Posner*, 2009 UT App 347, ¶ 19 (quotation simplified). Instead, to support his claim, Pyper makes conclusory assertions about an escrow agent's purpose, training, and position in a given transaction, and he otherwise largely focuses on the case-specific facts relevant to his closing and the parties' experts' opinions regarding the significance of certain facts. As a result, resolving the legal question of whether an escrow agent's fiduciary duty ought to be expanded would require us to "step outside our role as a neutral reviewing body and assume the burden of argument and research" on Pyper's behalf. *See Nebeker v. Summit County*, 2014 UT App 244, ¶ 34, 338 P.3d 203 (quotation simplified). We decline to do so.

¶28    In short, Pyper has not adequately framed or approached the issue to persuade us that it is appropriate to expand the scope of an escrow agent's well-settled fiduciary duty. On this basis, we affirm the district court's grant of summary judgment to Meridian on his negligence claim.[3]

_____

3. Citing rule 33 of the Utah Rules of Appellate Procedure, Meridian asserts that Pyper's appeal is frivolous and on that basis Meridian seeks an award of attorney fees. Rule 33 provides

(continued…)

CONCLUSION

¶29   We affirm the district court's conclusion that Pyper had not proven his claim against Reil for civil conspiracy. We also affirm the district court's grant of summary judgment in Meridian's favor on Pyper's negligence claim.

————————

(…continued)

that if an appellate court determines that an appeal "is either frivolous or for delay, it shall award just damages, which may include . . . reasonable attorney fees, to the prevailing party." Utah R. App. P. 33(b). Yet "the imposition of such a sanction is . . . only to be used in egregious cases." *Redd v. Hill*, 2013 UT 35, ¶ 28, 304 P.3d 861. Pyper's arguments on appeal are unavailing, but we conclude that his appeal does not present an egregious case and therefore decline to award Meridian fees.